Fred G. STAUB and Yvonne G. Staub, Appellants,

v.

G. H. HARRIS, James P. Harris, and G. H. Harris Associates.

No. 79–2469.

United States Court of Appeals, Third Circuit.

Argued March 27, 1980.

Decided July 8, 1980.

---

Donald Marritz (argued), Legal Services, Inc., Gettysburg, Pa., for appellants.

Ronald M. Katzman (argued), Goldberg, Evans & Katzman, Harrisburg, Pa., for appellees.

Before ROSENN, GARTH and SLOVITER, Circuit Judges.

SLOVITER, Circuit Judge.

### I.

This case requires us to decide whether a per capita tax levied by a Pennsylvania taxing district is a "debt" encompassed within the scope of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (Supp. II 1978). The district court held that it was not, and dismissed the action brought under that statute for lack of jurisdiction.

### II.

Appellants Fred G. Staub and Yvonne G. Staub (hereinafter "Staubs"), are husband and wife living in New Oxford, Adams County, Pennsylvania. They are subject to per capita taxes in the following taxing districts in which they reside: Conewago Valley School District, Hamilton Township and the County of Adams. The Staubs were delinquent in paying certain of these per capita taxes levied by these taxing districts for 1972 through 1977 in the amount of $235.21.

The taxing districts hired G. H. Harris and James P. Harris, of G. H. Harris Associates (hereinafter "Harris"), a private agency, to collect their delinquent taxes.[1] Harris is a profit-making business entity which collects debts owed or due or asserted to be owed or due to a party other than itself. It is neither an employee nor officer of the United States or of any state or local government. Nonetheless, it held itself out as a "deputy tax collector."[2]

On June 13, 1978, the Harrises served a document titled "Final Notice Before Being Posted For Sale or Other Means of Collections to be Instituted" on one of the Staubs' children. The notice threatened the sale of the Staubs' home and personal goods unless they paid $323.75 by June 17, 1978.[3] It was embossed with the legend "Delinquent Tax Collector," and was signed "J. P. Harris, Deputy # 48." It stated that any action on the part of the Staubs to interfere with the proposed actions was a criminal misdemeanor which could result in a $500 fine or 30 days' imprisonment or both.

Alleging jurisdiction under the Federal Debt Collection Practices Act (hereinafter "FDCPA")[4], the Staubs then brought suit against the individual defendants and against G. H. Harris Associates for harassment and abuse, false and misleading representation, unfair practices, and failure to validate the debt, all in violation of the FDCPA. They sought declaratory and injunctive relief as well as compensatory and exemplary damages.

Defendants filed a motion to dismiss alleging that there was no jurisdiction because any cause of action under the FDCPA must be incident to collection of a "debt", and a tax was not a debt under the statute. The district court granted the motion to dismiss, holding that taxes are not encompassed within the definition of "debt" under the statute.

### III.

The FDCPA was enacted in 1977 as an amendment to the Consumer Credit Protec-

---

1. Defendants collectively will be referred to as the "Harrises".

2. Under Pennsylvania Law, Pa.Stat.Ann. tit. 72, § 5511.22 (Purdon 1968), deputy tax collectors are deputized in writing and are then authorized to collect taxes with the same authority as the appointing tax collector. The defendants did not receive such authorization.

3. According to the complaint, the Staubs owed $235.21 in taxes, not $323.75 as stated in the notice.

4. The complaint pleaded jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1337 and 28 U.S.C. § 2201.

tion Act "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." Consumer Credit Protection Act, Sen.Rep. No. 95–382, 95th Cong., 1st Sess. 1–2, *reprinted in* [1977] U.S. Code Cong. & Admin. News, pp. 1695, 1696. Among the specific practices prohibited are threats of violence, obscene language, the publishing of "shame lists," harassing or anonymous telephone calls, impersonating a government official or attorney, misrepresenting the consumer's legal rights, simulating court process, obtaining information under false pretenses, collecting more than is legally owing, and misusing postdated checks. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f. The statute does not apply to persons or businesses collecting debts on their own behalf. *Id.* § 1692a(4). It is directed to those persons who are engaged in business for the principal purpose of collecting debts. *Id.* § 1692a(6). In order to prevent collection action against the wrong person or against a debtor who has already paid, the Act requires the debt collector to validate the debt. *Id.* § 1692g. Within five days after the initial communication, the debt collector must send the consumer written notice stating the name of the creditor and the amount owed. *Id.* § 1692g(a)(1)–(2). If the consumer disputes the validity of the debt within 30 days, the debt collector must cease collection until s/he sends the consumer verification. *Id.* § 1692g(b). Congress viewed the statute as primarily self-enforcing. Sen.Rep. No. 95–382 at 5, *reprinted in* [1977] U.S. Code Cong. & Admin. News at 1699. The statute provides for suit by the aggrieved consumer who may recover actual damages, attorney's fees and costs, and additional damages to be assessed as the court deems appropriate, not exceeding $1,000. 15 U.S.C. § 1692k(a).

Plaintiff's complaint alleges that the Harrises' actions consisted, *inter alia*, of harassment, false representation of the Harrises' status, and failure to validate the debt. In the posture of this case, we must assume that the allegations of the complaint are true. Therefore, if the transac-

tion is covered by the FDCPA, defendants' actions would fall within the behavior proscribed by the statute.

Defendants moved to dismiss on the ground that the statute only authorizes a cause of action incident to collection of a "debt" and taxes are not included within the definition of "debt" set forth in the statute. The statute defines a debt as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

On appeal, defendants suggest that this definition presents three questions: (1) Did the appellants enter into a "transaction" with the taxing bodies? (2) Did the tax obligation "arise" out of such transaction? (3) Are the services received from such transactions "primarily for personal, family, or household purposes," as required by the statute?

In granting the motion to dismiss, Judge Rambo focused primarily on the third question. She reasoned:

> To understand the intent of Congress the definition should be read as a whole. It is describing a transaction between a consumer and another party by which the consumer obliges himself to pay money in return for "money, property, insurance or services which are . . . *primarily* for personal, family or household purposes . . . ." (Emphasis added). Plaintiffs would have the Court define the word "transaction" with such breadth that it would include the mere fact of living in a taxing district. However, even a broad definition of transaction would not bring taxes within the meaning of the statute. The services which are the subject of the transaction must be "primarily for personal, family, or household purposes." Taxes primarily finance governmental functions, such as schools

or police and fire protection, which secondarily may benefit an individual resident or household. The same governmental function benefits businesses in the taxing district.

The Harrises suggest that although the word "transaction" is not defined in the statute, it must be construed as referring to a contractual relationship. They point to the language of the statute's special venue provision which determines venue either by the consumer's place of residence or the place where the consumer signed the contract, 15 U.S.C. § 1692i. We need not decide whether "transaction" as used in the FDCPA always connotes the existence of an underlying contractual relationship. We believe that, at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages.

The Staubs recognize that the relationship between the taxpayer and the state stands on somewhat different ground than the traditional commercial relationship. In order to fall within the statutory language, they creatively evoke the concept of the social contract between the people and the government to show a quasi-contractual transaction between the taxpayer and the local taxing units. They claim there are continuous services provided by the government resulting from its perpetual transaction with the taxpayers. We doubt that Congress was thinking along such lines when it enacted the statute. The contrary is indicated by a statutory definition limiting the subject of the transaction to that which is for "personal, family, or household purposes," 15 U.S.C. § 1692a(5). Taxes are used for more general purposes; they are not limited to the statutory purposes. They provide funds for such nonpersonal pur-

poses as prisons, roads, defense, courts and other governmental services. As noted in Black's Law Dictionary 1307 (5th ed. 1979):

"Taxes", as the term is generally used, are public burdens imposed generally upon the inhabitants of the whole state, or upon some civil division thereof, for governmental purposes, without reference to peculiar benefits to particular individuals or property.

■ Thus the statutory language does not appear to support the construction of a tax as a debt under the FDCPA. In reviewing the legislative history of the Act to ascertain if it provides any support for the meaning of "debt" urged by the Staubs, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976), we find that the legislative history of the FDCPA is bereft of any explicit reference to taxes. The Act was intended to apply "only to debts contracted by consumers for personal, family or household purposes"; even the collection of commercial accounts is beyond its coverage. Sen. Rep. No. 95–382 at 3, *reprinted in* [1977] U.S. Code Cong. & Admin. News at 1697. There is nothing in the language or the history of the FDCPA to lead us to believe that Congress intended to extend the scope of the Act to encompass debtors of any kind other than consumer debtors. *See* H.R.Rep. No. 95–131, 95th Cong., 1st Sess. (1977); Sen.Rep. No. 95–382, 95th Cong., 1st Sess. (1977), *reprinted in* [1977] U.S. Code Cong. & Admin. News, p. 1695. Plaintiffs have not pointed to anything in the legislative history contrary to our view.

The Staubs next argue that we should give credence to an informal opinion letter they have received from the Federal Trade Commission ("FTC") indicating that the collection of taxes is within the purview of the FDCPA. The gist of the FTC letter is that if G. H. Harris Associates came within the statutory definition of "debt collector",[5]

---

5. The statute defines a "debt collector" to be: [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (G) of the last sentence of this paragraph, the term in-

their "efforts to collect county, township and school district taxes would require compliance with the provisions of the [FDCPA]." The FTC letter stated that the definition of "debt", 15 U.S.C. § 1692a(5), would apply to taxes owed to local taxing districts.

 Although the FTC is the agency charged with the administrative enforcement of the FDCPA, 15 U.S.C. § 1692*l*(a), its power is clearly limited in this statute. The statute expressly prohibits the FTC from issuing additional rules or regulations concerning debt collection, *id.* § 1692*l*(c)–(d), because Congress thought the FDCPA "fully addresse[d] the problem of collection abuses." Sen.Rep. No. 95–382 at 6, *reprinted in* [1977] U.S. Code Cong. & Admin. News at 1700. Therefore, the precedential value of the FTC's informal advisory opinion is limited by the restricted interpretive power given to that agency under the FDCPA.

It is a "general proposition that considerable respect is due 'the interpretation given [a] . . . statute by the officers or agency charged with its administration,'" *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (quoting *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct.

2441, 2445, 57 L.Ed.2d 337 (1978)), but the letter received by the Staubs is an informal opinion, denominated as such. Such unofficial interpretations are "merely . . . suggestion[s] that the stated interpretation[s are] the 'more likely' meaning of the statute." *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740, 747 (5th Cir. 1973). Although the FTC informal opinion should be given some weight by this court, *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 976 (5th Cir. 1974), it is by no means binding, *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d at 747, and we decline to follow it.

In light of the statutory language and the legislative history limiting the FDCPA to the protection of consumers, we believe the Act does not apply to practices occurring in the course of collection of taxes. Although we are mindful of the difficulties that the Staubs have encountered, any relief for them under the FDCPA lies in congressional extension of the Act. Therefore we will affirm the judgment of the district court.

cludes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors;

(F) any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client; and

(G) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6).