Terrence **NEWMAN** and Michelle Newman, Plaintiffs– Appellants,

v.

**BOEHM, PEARLSTEIN & BRIGHT, LIMITED,** Defendant–Appellee.

David J. **RITER** and Kathy Riter, Plaintiffs–Appellants,

v.

**MOSS & BLOOMBERG, LIMITED,** Defendant–Appellee.

Nos. 96–2839, 96–2841.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1997.

Decided July 2, 1997.

Rehearing Denied Sept. 12, 1997.

Carlo G. D'Agostino, Chicago, IL, James Shedden, David J. Philipps (argued), Steven J. Tomiello, Catherine Lee Gemrich, Beeler, Schad & Diamond, Chicago, IL, for Plaintiffs–Appellants in No. 96–2839.

Daniel F. Konicek (argued), Connelly & Schroeder, Geneva, IL, for Defendants–Appellees.

Joanne Faulkner, New Haven, CT, for Amicus Curiae National Association of Consumer Advocates, Inc., National Consumer Law Center, Inc., Consumer Law Center of the South.

Arthur L. Klein, Michael C. Kim, Allan Goldberg, David M. Bendoff, Arnstein & Lehr, Chicago, IL, Thomas J. Hindman, Lauren C. Groh, Orten, Hindman & Jordan, Denver, CO, Stephen M. Marcus, Marcus,

Goodman, Emmer & Brooks, Braintree, MA, for Amicus Curiae Community Associations Institute.

Charles M. Steinberg, Chicago, IL, for Amicus Curiae Near North Association of Condominium Presidents.

James Shedden, David J. Philipps (argued), Catherine Lee Gemrich, Michael S. Hilicki, Beeler, Schad & Diamond, Chicago, IL, for Plaintiffs–Appellants in No. 96–2841.

Before CUDAHY, ROVNER, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

■ The question presented by these appeals, one of first impression in the circuits, is whether an assessment owed to a homeowners or condominium association qualifies as a "debt" under the Fair Debt Collection Practices Act (the "FDCPA" or "Act"), 15 U.S.C. §§ 1692 *et seq.* Guided by our recent decision in *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322 (7th Cir.1997), which interprets the term "debt" under that Act, we hold that it does. We therefore reverse the district court's contrary judgment and remand for further proceedings.

## I.

In August 1995, Terrence and Michelle Newman received a collection letter from defendant Boehm, Pearlstein & Bright, Ltd., which the law firm sent on behalf of the Board of Directors of the Bridlewood Village Condominium Association. The letter informed the Newmans that they were in default on their obligation to pay a "proportionate share of the common expenses" due the association as required by the condominium ownership declaration and the association's by-laws. The amount due, according to the letter, was $421.31, which included past-due assessments, late fees, interest, and attorney's fees. The letter stated that if the amount demanded was not paid within thirty days, the association would commence proceedings to obtain possession of the Newmans' condominium unit.

Approximately one month later, David and Kathy Riter received a similar letter from Moss & Bloomberg, Ltd., a law firm representing the Greenbrook Tanglewood Homeowners Association. This letter indicated that the Riters owed $443.60 to the association and that a certified check in that amount should be sent within ten days. Barring that, the letter warned, Moss & Bloomberg would proceed with a "30–day Notice Demand for Possession" unless it was notified in writing that the Riters were disputing the amount owed.

After receiving these letters, the Newmans and Riters filed separate actions under the FDCPA, alleging that the defendant law firms had failed to comply with that statute's requirements. Both the Newmans and Riters specifically alleged that defendants had violated 15 U.S.C. § 1692g by failing to include in their collection letters the validation notice required by that section. *See Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996) (discussing validation notice requirement). Both couples also alleged violations of section 1692e(11) in that the letters they received did not expressly disclose that defendants were attempting to collect a debt and that any information obtained would be used for that purpose. The Newmans further alleged that Boehm, Pearlstein had violated section 1692e in one additional way—by falsely implying that legal proceedings on the alleged debt had already been initiated. The Newmans and Riters each sought statutory damages, costs, and attorney's fees in accordance with 15 U.S.C. § 1692k(a). Finally, both couples asked the district court to certify a class comprised of all individuals who had received similar letters from the defendant law firms and to appoint plaintiffs as class representatives. They also asked the court to appoint their attorneys (both couples were represented by the same counsel) as class counsel.

Moss & Bloomberg moved to dismiss the Riters' complaint for lack of subject matter jurisdiction, arguing that the past-due assessments referenced in its collection letter did not qualify as a "debt" under the Act. *See* 15 U.S.C. § 1692a(5) (defining a "debt" covered by the FDCPA). The district court granted the law firm's motion, holding that the as-

sessments at issue were not encompassed by the statutory definition of a "debt." *Riter v. Moss & Bloomberg, Ltd.*, 932 F.Supp. 210 (N.D.Ill.1996). In reaching that conclusion, the court noted that a number of courts had construed the term "debt" in the Act as requiring an offer or extension of credit to a consumer. *Id.* at 211 (citing, *inter alia, Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163, 1168–69 (3d Cir.1987)). The district court observed that based upon that interpretation of the Act, the lower courts had uniformly held that an assessment owed to a homeowners or condominium association did not qualify as a "debt" because it did not satisfy the "credit" requirement. *Id.* at 211–12. Although it described the Riters' contrary argument as "not entirely unsound," the district court refused to buck the trend that was developing in the lower courts. *Id.* at 212. It therefore dismissed the Riters' complaint for lack of subject matter jurisdiction.

After issuing its decision in *Riter,* the district court granted Boehm, Pearlstein's motion to reassign the Newmans' case to it under the court's local rule. The district court then dismissed the Newmans' complaint sua sponte under *Riter.* The Newmans and Riters appealed separately to this court, and we consolidated their appeals for oral argument and disposition.

## II.

The FDCPA defines a "debt" in the following way:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The bulk of the briefing in these appeals is addressed to whether this definition requires that there be an offer or extension of credit, and thus some type of deferred payment obligation, as the Third

Circuit determined in *Zimmerman.* See 834 F.2d at 1168–69. The district court followed *Zimmerman* and the weight of lower court authority in concluding that it did. *Riter,* 932 F.Supp. at 212. From that premise, the court reasoned that the Riters' obligation to pay past-due assessments to their homeowners association did not involve an offer or extension of credit, or a deferred payment obligation. *Id.* But after we heard argument in these appeals, another panel of this court expressly rejected *Zimmerman's* "credit" requirement and held that "an offer or extension of credit is not required for a payment obligation to constitute a 'debt' under the FDCPA." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1326 (7th Cir.1997). All that is required under *Bass* is a transaction creating an obligation to pay. *Id.* at 1325. Based upon that understanding, the *Bass* panel concluded that the payment obligation arising from a dishonored check qualifies as a "debt" under the Act. *Id.*;[1] *see also Ryan v. Wexler & Wexler,* 113 F.3d 91 (7th Cir.1997) (following *Bass* ).

To our knowledge, no federal court has yet concluded that the obligation to pay a condominium assessment constitutes a "debt" under the FDCPA. Yet the few courts to have considered that question have all employed *Zimmerman's* interpretation of that statutory term. *See Riter,* 932 F.Supp. at 211–12; *Vosatka v. Wolin–Levin, Inc.,* No. 94 C 4129, 1995 WL 443950, *7–9 (N.D.Ill. July 21, 1995); *Azar v. Hayter,* 874 F.Supp. 1314, 1318–19 (N.D.Fla.1995), *aff'd. without op.,* 66 F.3d 342 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 712, 133 L.Ed.2d 666 (1996); *Archer v. Beasley,* Civ. No. 90–2576(CSF), 1991 WL 34889, *6 (D.N.J. Mar. 5, 1991). Having rejected *Zimmerman's* "credit" requirement in *Bass,* we now write on a clean slate.

■ The Riters and Newmans assert that their obligation to pay past-due assessments qualifies as a "debt" because the obligation arose from the purchase of the underlying property units. According to plaintiffs, the

1. Because it rejected *Zimmerman's* "credit" requirement, the *Bass* panel circulated its opinion to the active judges of the circuit in accordance with Circuit Rule 40(e). No judge favored a rehearing en banc. *See Bass,* 111 F.3d at 1330 n. 14.

purchase of their homes is the "transaction" to which section 1692a(5) refers even if the precise amount and timing of future assessments had not yet been determined. Defendants disagree, of course, but they do so by resorting to the now-discredited "credit" requirement. They assert that because an assessment generally is paid by unit owners before any goods or services are provided by the association, there is no transaction involving an extension of credit or deferred payment. Yet because *Bass* holds that no extension of credit or deferred payment is required, defendants' argument must fail.

By paying the purchase price and accepting title to their home, the Riters became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association. The Newmans similarly became obligated upon the purchase of their condominium unit to pay any assessments pursuant to the condominium ownership declaration and the by-laws of their association, as well as under an Illinois statute addressed to condominium property. *See* 765 ILCS 605/9. It is therefore clear that the obligation to pay in these circumstances arose in connection with the purchase of the homes themselves, even if the timing and amount of particular assessments was yet to be determined. *Cf. In re Rosteck*, 899 F.2d 694, 696 (7th Cir.1990) (obligation to pay condominium assessments arose upon purchase of unit, thereby satisfying Bankruptcy Code's definition of "debt"). Because the statute's definition of a "debt" focuses on the transaction creating the obligation to pay (*Bass*, 111 F.3d at 1325), it would seem to make little difference under that definition that unit owners generally are required to pay their assessments first, before any goods or services are provided by the association. That would only be important if the statute required a credit obligation, which *Bass* says it does not. 111 F.3d at 1326. Regardless of whether the assessment or the service comes first, the obligation to pay is derived from the purchase transaction itself. The assessments at

issue in this case therefore qualify as "obligation[s] of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5).

Not all such obligations are "debts" under the Act, however, for "the money, property, insurance, or services which are the subject of the transaction" must primarily be "for personal, family, or household purposes." *Id.* We have concluded that the relevant transactions in these cases were the purchase of the family homes, and on that general level, there can be little doubt that the subject of those transactions had a personal, family, or household purpose. More specifically, however, we also believe that the assessments themselves satisfy that statutory requirement. To the extent that the assessments were to be used to improve or maintain commonly-owned areas, that purpose, too, qualifies as "personal, family, or household." In our view, when a special assessment is used to repair a common roof, or a monthly assessment is used to pay for services like snow removal from a common walkway or landscaping of a common yard, the assessments are for a household purpose even if more than a single household benefits. We thus are unable to agree with defendants' suggestion that because all unit owners benefit, assessments like these can be likened to past-due tax obligations, which are not considered "debts" under the Act because they generally are used for communal rather than personal, family, or household purposes. *See Staub v. Harris*, 626 F.2d 275, 278 (3d Cir.1980) (taxes are used for more general purposes than the statute requires, as they provide funds for "prisons, roads, defense, courts and other governmental services"); *see also* Federal Trade Commission—Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50102 (1988) (unpaid taxes not "debts" under the Act).[2] The assessments here have a more specific household purpose than taxes collected by a governmental entity. Rather than generally providing for government services, these assessments are collected in order to improve and maintain commonly-

---

**2.** This FTC policy statement is not entitled to conclusive weight in the courts (*see Heintz v. Jenkins*, 514 U.S. 291, 296–99, 115 S.Ct. 1489, 1492–93, 131 L.Ed.2d 395 (1995)), as it reflects only the current enforcement position of the Commission's staff, which is not binding on the Commission itself. *See* Policy Statement, 53 Fed.Reg. at 50101. In cases interpreting the

owned areas used by each unit owner. The assessments thereby directly benefit each household in the development. As a result, the assessments have a "personal, family, or household purpose." *See Archer,* Civ. No. 90–2576(CSF), 1991 WL 34889, at *4–5 (rejecting argument that condominium assessments can be likened to local taxes).

### III.

 Because the past-due assessments owed by the Newmans to their condominium association and by the Riters to their homeowners association qualify as "debts" under the FDCPA, the district court had subject matter jurisdiction to adjudicate plaintiffs' claims. *See* 15 U.S.C. § 1692k(d).[3] For this reason, we reverse the district court's judgment in each case and remand for further proceedings.

REVERSED AND REMANDED.

FDCPA, however, we take note of the staff's position and accord it due weight. *Bass,* 111 F.3d at 1327 n. 8. In that regard, we note here that the staff believes that past-due condominium assessments qualify as "debts" under section 1692a(5). *See* Policy Statement, 53 Fed.Reg. at 50102.

3. We note, finally, that the defendant law firms have not asserted that they are not "debt collectors" under the Act. The FDCPA applies only to the debt collection activities of a third party who is collecting a debt owed to another, as plaintiffs allege the defendant law firms were doing here. *See* 15 U.S.C. § 1692a(6). As a result, the Act would not also apply to the activities of a homeowners or condominium association in collecting a debt on its own behalf. *See* 15 U.S.C. § 1692a(6)(A) (term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor").