**Michael RIEBE and Barbara Riebe, Plaintiffs,**

v.

**JUERGENSMEYER AND ASSOCIATES and John E. Juergensmeyer, Defendants.**

**No. 97 C 310.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 31, 1997.

Edward J. Wartman, Tintari Riebe Services, Inc., Chicago, IL, for plaintiffs.

John E. Juergensmeyer, Richard P. Bingham, Juergensmeyer and Associates, Elgin, IL, for defendants.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court are Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Motion for Attorney's Fees. For the following reasons, the court grants the Motion to Dismiss and denies the Motion for Attorney's Fees.

## I. BACKGROUND

The origin of this federal case is a minor's failure to return a library book. In 1995, Elizabeth Riebe, a minor, borrowed a library book from the St. Charles Public Library ("the Library"). The due date came and went without Ms. Riebe returning it. The Library waited. After Ms. Riebe failed to return the book for six months, the Library retained Defendants to write to her parents ("Plaintiffs") requesting payment of $29.95.[1] Addressed to Plaintiffs, the letter, as Plaintiffs see it, implied that they, or their daughter, could be arrested and imprisoned for intentional theft of public library property. Attached to the letter was a copy of the provisions of the Illinois Criminal Code.[2] Rather than paying the $29.95 or at least returning the book, and thereby putting the matter to rest, Plaintiffs filed a complaint in

---

1. Nothing in the record indicates whether this was a routine practice of the Library or whether counsel was on retainer with regard to a substantial number of persons who had failed or refused to return books.

2. Curiously, neither party has included a copy of the letter or its attachments in the record. Therefore, the specific Criminal Code provisions that Defendants allegedly referred to in their attachment are not disclosed to the court. Nonetheless, each party has cited two provisions of the Illinois Public Library District Act of 1991, 75 ILCS 16/120, entitled "Violations of district ordinances; penalties," and 75 ILCS 16/30–55.70, entitled "Fines and penalties." There are also, of course, state criminal statutes regarding misdemeanor and felony theft.

federal court, alleging that Defendants' letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (1996).

Defendants now move to dismiss Plaintiffs' amended complaint and for attorney's fees. They argue that this court lacks subject matter jurisdiction under the FDCPA because their letter to Plaintiffs did not involve a "debt" within the meaning of the statute.[3]

## II. DISCUSSION

### A. Motion to Dismiss

■ Congress created the FDCPA to protect consumers from unfair, deceptive, and harassing debt collection practices. 15 U.S.C. § 1692(e). However, this protection extends only to the collection of a "debt" as the word is defined by the FDCPA. That is:

> Any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes....

15 U.S.C. § 1692a(5).

In a recent opinion, the Seventh Circuit clarified the meaning of "debt" under the FDCPA. *Bass v. Stolper, Koritzinsky, Brewster & Neider*, 111 F.3d 1322, 1325–26 (7th Cir.1997). In *Bass*, the court addressed whether the FDCPA "applies to third-party efforts to collect payment from consumers who use a dishonored check for the purchase of goods or services." *Id.* at 1323. The crux of the case, however, was "whether the payment obligation that arises from a dishonored check constitutes a 'debt' as defined in the [FDCPA]." *Id.* The court answered in the affirmative, and held that "an offer or extension of credit is not required for a payment obligation to constitute a 'debt' under the FDCPA." *Id.* at 1326. The court reasoned

that "the plain language of the [FDCPA] defines 'debt' quite broadly 'as any obligation to pay arising out of a [consumer] transaction.'" *Id.* at 1325. The court concluded that "as long as the transaction creates an obligation to pay, a debt is created." *Id.*

■ Though the *Bass* court noted that the statute defined "debt" broadly, it acknowledged that not all obligations to pay are considered "debts" under the FDCPA. *Id.* at 1324. In doing so, the court focused on the term "transaction" included in the statute's definition of "debt." *Id.* at 1325–26; *see also Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 480–81 (7th Cir. 1997) (under *Bass*, the definition of "debt" under the FDCPA "focuses on the transaction creating the obligation to pay"). "Transaction" is not defined in the FDCPA. *Bass*, 111 F.3d at 1325. However, the court stated that "the term 'transaction' is a broad reference to many types of business dealings between parties...." *Id.* (*citing Webster's New World Dictionary* 1509 (2d ed.1986)).

As an illustration, the court explained that some conduct, such as theft, "did not amount to a transaction" which could give rise to a "debt" under the statute. *Id.* at 1326 (*citing Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3rd Cir.1987) (payment obligation arising from theft of television signals was outside the reach of the FDCPA because there was no transaction)). The court stated, "although a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Id.*

■ Thus, cases holding that a "debt" exists under the FDCPA have consistently involved some form of initial "business dealing" creating the obligation to pay.[4] *See Bass*,

---

**3.** Because whether a "debt" existed is a threshold requirement for application of the FDCPA, the court will not address Plaintiffs' specific allegations that the contents of Defendants' letter violated the statute (assuming the letter was available). *See Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir.1994) ("a threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'"). Notably, the

Seventh Circuit recently proposed an ideal "form letter" to guide collection agencies in their compliance with the FDCPA. *See Bartlett v. Heibl*, 128 F.3d 497, 501–02 (7th Cir.1997).

**4.** For purposes of clarity, the court finds that the term "business dealing" involves consensual, economic activity by consumers for consumer-related goods or services. The use of this term is not to be confused with the collection of a com-

111 F.3d at 1323 (purchase of groceries with dishonored check); *Newman,* 119 F.3d at 481 (obligation to pay past-due condominium assessments arose from underlying purchase of units). Nonetheless, Plaintiffs urge this court to adopt the following definition of "transaction" provided in *Black's Law Dictionary:*

> Act of transacting or conducting any business; between two or more persons; negotiation.... It may involve selling, leasing, borrowing, mortgaging, or lending. Something which has taken place, whereby a cause of action has arisen....

*Black's Law Dictionary* 1496 (6th ed.1990). Despite Plaintiffs' urging, this definition does not necessarily weigh entirely in their favor. The definition still suggests that a transaction involves a "business dealing," and merely notes that such dealing *may* involve borrowing or lending. In any event, the court declines to rely on Black's Law Dictionary as authority in this case.

Here, there was no initial "business dealing" creating an obligation to pay, only an obligation to return a library book. In theory, this may have created some type of contract, but not in the context of a "business dealing" as contemplated by the FDCPA, *e.g,* the purchase of consumer goods or services. *See Bass,* 111 F.3d at 1326. Rather, the borrowing of a library book is a public privilege that largely depends on trust and the integrity of the borrower.

Therefore, for purposes of the facts of this case, we agree with Defendants' assertion that "public libraries do not engage in business transactions with patrons—they lend public property to patrons, free of charge." Def. Reply at 1.[5] A library is not a center of commerce but rather a "place dedicated to quiet, to knowledge, and to beauty," and "a place to test or expand ideas...." *Board of Educ. v. Pico,* 457 U.S. 853, 868, 102 S.Ct. 2799, 2809, 73 L.Ed.2d 435 (1982) (citations omitted). Moreover, "[a]n adequate library is essential for the dissemination of knowledge." *Seibold v. Kinston–Lenoir County Public Library,* 264 N.C. 360, 141 S.E.2d 519 (1965). "Its very purpose is to aid in the acquisition of knowledge through reading, writing and quiet contemplation." *Kreimer v. Bureau of Police,* 958 F.2d 1242, 1261 (3rd. Cir.1992). Unfortunately, when one fails to return library materials, he frustrates this purpose by depriving the public the full-use of the tremendous resources that a library has to offer.[6]

Consequently, the court finds that the borrowing of a library book is not the type of conduct that the FDCPA considers a transaction. As such, the ensuing obligation to pay for failure to return the book did not create a "debt" under the FDCPA. To do so would simply stretch the reach of the FDCPA too far, beyond the intended scope of "business dealings" by consumers. *See Mabe v. G.C. Services Limited Partnership,* 32 F.3d 86, 88 (4th Cir.1994) (government-imposed obligation to pay child support not a "debt" under the FDCPA because it was not incurred in exchange for consumer goods or services); *Staub v. Harris,* 626 F.2d 275, 278 (3rd Cir.1980) (FDCPA did not apply to tax collection efforts because "the relationship between taxpayer and taxing authority does not encompass that type of pro tanto exchange which the statutory definition [of debt] envisages."); *Battye v. Child Support Services,* 873 F.Supp. 103, 105–06 (N.D.Ill. 1994) (obligation for past-due child support

---

mercial account, which is beyond the coverage of the FDCPA. *See Staub v. Harris,* 626 F.2d 275, 278 (3rd Cir.1980) (*citing* S.Rep. No. 95–382, at 3 (1977)).

**5.** The court is aware that, in some instances, libraries charge fees in advance for the rental of items such as videos and compact discs. However, there is no indication that that is what occurred here—the borrowing of a library book in the traditional sense.

**6.** A 1993 article in the Chicago Tribune highlighted the problem of library patrons' failure to return books. *See* Penny Roberts, *Cash–Strapped Libraries Find Too Many Real Steals,* Chi. Trib., November 26, 1993, § 1, at 1:

> The latest available studies estimate that $50 million in materials disappear from America's libraries each year and that more than one percent of checked-out books are never returned, according to the American Library Association. Among Chicago-area libraries, that rate appears to be slightly higher. The annual loss ranges between just a few of the 36,000 books in the one-building Palos Heights Public Library to as high as three percent of the more than six million books in the Chicago Public Library's eighty-three regional and branch facilities.

was not a "debt" under the FDCPA because it did not arise out of a transaction and Plaintiff was not a consumer); *Shorts v. Palmer*, 155 F.R.D. 172, 176 (S.D.Ohio 1994) (obligation to pay for shoplifted cigars was not a "debt" because it did not arise from a transaction and Plaintiff was not a consumer).[7]

Accordingly, the court grants Defendants' Motion to Dismiss.

### B. Attorney's Fees

 Defendants' move for attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) (1996). Section 1692k(a)(3) provides in relevant part:

> On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

In support of their motion, Defendants allege that Plaintiffs acknowledged in their original complaint that they were responsible for a fine, rather than a debt. According to Defendants, it was only in Plaintiffs' amended complaint that Plaintiffs deleted the reference to a fine as a means to avoid early dismissal. Furthermore, Defendants allege that the letters of Plaintiffs' counsel demanding settlement of the case for $4,000 amounted to extortion; in one of these letters, Plaintiffs' counsel threatened to file a lawsuit seeking over $31,000 if Defendants did not settle.

The court has reviewed each of the letters. Although Plaintiffs' counsel used very strong language in the letters, the court is not convinced by that alone that Plaintiffs brought this lawsuit in bad faith and for the purpose of harassment. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir.1985); *Latimer v. Transworld Systems, Inc.*, 842 F.Supp. 274, 275 (E.D.Mich.1993). Moreover, despite Defendants' characterization of the lawsuit as absurd, the facts of this case are sufficiently unique to bring an action (albeit unsuccessful) under the statute, especially in light of the recent debate of what constitutes a "debt" under the FDCPA. Finally, Plaintiffs filed this suit before the Seventh Circuit's opinion in *Bass*. Therefore, the court concludes that an award of attorney's fees is not warranted in this case.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss Plaintiffs' suit for lack of subject matter jurisdiction and denies Defendants' Motion for Attorney's Fees under 15 U.S.C. § 1692k(a)(3).

IT IS SO ORDERED.

---

7. Because the court holds that a transaction did not take place, we need not address the issue of "fines" and Defendants' reliance on a Federal Trade Commission Commentary stating that the term "debt" under the FDCPA does not include fines and tort claims. *See* Federal Trade Commission's Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50102 (1988). Given this commentary, Defendants argue that Plaintiffs' claim must fail because the failure to return a library book is a violation of a village ordinance and statute punishable by fine, and could also result in a tort of conversion. In any event, the Seventh Circuit has stated that "[t]his FTC policy statement is not entitled to conclusive weight in the courts [citation], as it reflects only the current enforcement position of the Commission's staff, which is not binding on the Commission's staff itself" *Newman*, 119 F.3d at 481 n. 2 (7th Cir.1997).