**Jeffrey A. BERMAN, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**GC SERVICES LIMITED PARTNER-SHIP, a Delaware Limited Partnership and its general partners, DLS Enterprises, Inc., a Delaware corporation, and GC Financial Corp., a Delaware corporation, Defendants–Appellees.**

No. 97–3315.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1998.

Decided June 9, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied July 7, 1998.

David J. Philipps, Catherine Lee Gemrich (argued), Beeler, Schad & Diamond, Chicago, IL, for Plaintiff–Appellant.

James T. Ferrini, John M. Hynes, Melissa A. Murphy-Petros (argued), Clausen Miller P.C., Chicago, IL, for Defendants-Appellees.

Before CUMMINGS, BAUER and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

The issue before this Court is whether an obligation to pay unemployment insurance contributions pursuant to the Illinois Unemployment Insurance Act qualifies as a "debt" under the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. §§ 1692 et seq.

Plaintiff Jeffrey Berman filed a complaint against defendants, alleging violations of the FDCPA in defendants' attempt to collect delinquent unemployment insurance contributions on behalf of the Illinois Department of Employment Security ("IDES"). Defendants moved to dismiss, claiming that unemployment insurance contributions do not meet the statutory definition of "debt" and thus the FDCPA does not apply to defendants' collection efforts. The district court dismissed plaintiff's complaint for lack of subject matter jurisdiction, holding that plaintiff's obligation to pay unemployment insurance premiums is not a "debt" for the purposes of the FDCPA.

Based on our decisions in *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir.1997), and *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir.1997), and the Third Circuit's decision in *Staub v. Harris*, 626 F.2d 275 (3d Cir.1980), we affirm the district court's judgment that the FDCPA does not apply to third-party efforts to collect delinquent unemployment insurance contributions because such obligations are not "debts" under the Act.

## I. Facts

Plaintiff hired a nanny to care for his daughter and thus became obligated to pay the nanny her wages. In addition, plaintiff became obligated to pay unemployment insurance contributions to the IDES. Under the Illinois Unemployment Insurance Act, employers in Illinois are required to pay quarterly unemployment insurance premiums to the IDES in order to fund the State's payment of benefits to Illinois residents during periods of unemployment. 820 ILCS 405/100, 405/1400. The IDES can attempt to collect any unpaid contributions through the use of debt collectors or by bringing a civil lawsuit. 820 ILCS 405/2206.

IDES hired the defendants, debt collector GC Services Limited Partnership and its general partners, DLS Enterprises and GC Financial Corporation, to attempt to collect delinquent contributions. On October 9, 1996, defendants sent plaintiff a letter seeking collection of allegedly unpaid unemployment contributions in the amount of $8,269.41 on behalf of the IDES. On October 23, 1996, defendants sent plaintiff another letter, repeating the demand for payment. However, plaintiff had never been delinquent in paying his required unemployment insurance contributions. After requesting that the IDES review his account, plaintiff received a letter on November 13, 1996, acknowledging that his account was paid in full and indicating an overpayment of $13.56.

On January 27, 1997, plaintiff filed a class action, alleging that defendants had failed to comply with the requirements of the FDCPA. Specifically, plaintiff alleged that defendants violated the FDCPA in their collection letters by failing to include the required validation notice under 15 U.S.C. § 1692g, by neglecting to disclose that defendants were attempting to collect a debt and that any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11), and by including information that would confuse or mislead an unsophisticated consumer.

Defendants moved to dismiss, contending that the obligation to pay unemployment in-

surance contributions does not qualify as a "debt" under the FDCPA and thus plaintiff failed to state a claim on which relief may be granted. See 15 U.S.C. § 1692a(5) (defining "debt" under the FDCPA).

The district court granted defendants' motion, holding that unemployment insurance contributions do not fall within the statutory definition of "debt" under the FDCPA because

> in return for plaintiff's obligation to pay money to the State of Illinois, the state gave plaintiff nothing except the satisfaction of helping other unemployed citizens * * *. [P]laintiff's debt did not result from the state providing "money, property, insurance or services * * * for personal, family, or household purposes" as required by the FDCPA['s definition of debt].

*Berman v. GC Services L.P.*, 1997 WL 392209, at *2 (N.D.Ill. June 30, 1997).

Plaintiff appeals the district court's decision. For the following reasons, we affirm.

## II. Analysis

■■■ We review the dismissal of a complaint for failure to state a cause of action de novo. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal of a complaint is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Id.* We review a district court's interpretation of a statute de novo. *United States v. Montoya*, 827 F.2d 143, 146–147 (7th Cir.1987).

■■■ The FDCPA was enacted to protect consumers from abusive, deceptive, and unfair debt collection practices by prohibiting the use of certain collection methods in a debt collector's attempt to collect a "debt" from a consumer. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir.1997). However, "[b]ecause not all obligations to pay are considered 'debts' under the Act, the definition of 'debt' thus serves to limit the scope of the FDCPA."[1] *Id.*

The term "debt" is defined in the FDCPA as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

Our decision in *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir. 1997), decided two days after the district court released its decision in this case, provides guidance in interpreting the statutory definition of "debt."

In *Newman*, we were faced with the issue of whether assessments owed to homeowners or condominium associations qualify as "debts" under the FDCPA. To determine whether assessments fall within the statutory definition, we engaged in a two-part inquiry, first asking whether assessments qualify as "obligation[s] of a consumer to pay money arising out of a transaction" and then assessing whether the "money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* at 481–482.

In analyzing whether property assessments qualify as "obligation[s] of a consumer to pay money arising out of a transaction," we relied on our decision in *Bass* where we held that a payment obligation arising from a dishonored check is a "debt" under the FDCPA. *Bass*, 111 F.3d at 1322. In so holding, we rejected the idea that an offer or extension of credit is required for a payment obligation to constitute a debt. *Id.* at 1326. Rather, we held that all that is required is an obligation to pay arising from a consensual transaction, where parties negotiate or contract for consumer-related goods or services. *Id.* Applying *Bass* to the facts of *Newman*, we found that the obligation to pay past-due assessments arises out of a consensual transaction, where parties negotiate or contract for consumer-related goods. *Newman*, 119

---

**1.** While the definitions of "debt collector" and "consumer" also limit the reach of the FDCPA, in this case, neither party disputes their status as debt collector or consumer.

F.3d at 481. Upon paying the purchase price of their home or condominium unit, the parties became bound by the ownership declaration and by-laws of their property associations, which required the payment of assessments. Because the obligation to pay the assessments was derived from the purchase transaction itself, we concluded that the assessments qualify as "obligation[s] of a consumer to pay money arising out of a transaction." *Id.*

Because not all obligations of a consumer to pay money arising out of a transaction are "debts" under the Act, we next analyzed whether "the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* We considered it relevant not only to analyze whether the purchase of the underlying property unit met the second part of the statutory definition of "debt," but also whether the derivative obligation, the payment of past-due assessments, satisfied the statutory requirement that "the money, property, insurance, or services" underlying the transaction "be primarily for personal, family, or household purposes." *Id.* After stating that the purchase of family homes, "on that general level," had a personal, family, or household purpose, we reasoned "more specifically * * * that the assessments themselves satisfy that statutory requirement." *Id.*

> In our view, when a special assessment is used to repair a common roof, or a monthly assessment is used to pay for services like snow removal from a common walkway or landscaping of a common yard, the assessments are for a household purpose even if more than a single household benefits.

*Id.*

■ In support of its conclusion, the *Newman* panel contrasted the assessments at issue with past-due tax obligations. In *Staub v. Harris*, 626 F.2d 275 (3d Cir.1980), the Third Circuit held that a past-due tax obli-

gation is not a "debt" because it generally is used for communal rather than "personal, family, or household purposes." *Id.* at 278; *Newman*, 119 F.3d at 481. The *Staub* court noted that taxes " 'are public burdens imposed generally upon the inhabitants of the whole state, or upon some civil division thereof, for governmental purposes, without reference to peculiar benefits to particular individuals or property.' " *Staub*, 626 F.2d at 278 (quoting BLACK'S LAW DICTIONARY 1307 (5th ed.1979)). The court reasoned that taxes are used for more general purposes than the statute requires since they "provide funds for such nonpersonal purposes as prisons, roads, defense, courts and other governmental services" and thus the taxpayer receives only a general public benefit from the taxing authority. *Id.* See also Federal Trade Commission—Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,102 (1988) (unpaid taxes not "debts" under the FDCPA).[2] In contrast to the past-due tax obligations in *Staub*, the *Newman* panel reasoned that

> [t]he assessments here have a more specific household purpose than taxes collected by a governmental entity. Rather than generally providing for government services, these assessments are collected in order to improve and maintain commonly-owned areas used by each unit owner. The assessments thereby directly benefit each household in the development. As a result, the assessments have a "personal, family, or household purpose."

*Newman*, 119 F.3d at 481–482. Therefore, because the assessments satisfied both elements of the statutory definition of "debt," we held that the district court had subject matter jurisdiction to adjudicate plaintiff's claims under the FDCPA.

■ Turning to the unemployment insurance contributions at issue in this case, we conclude that such obligations are not

---

**2.** We recognize that this FTC policy statement reflects only the current enforcement position of the Commission's staff (which is not binding on the Commission itself) and is not entitled to conclusive weight in the courts. See *Newman*, 119 F.3d at 481, n. 2 (citing *Heintz v. Jenkins*,

514 U.S. 291, 296–299, 115 S.Ct. 1489, 131 L.Ed.2d 395). However, in cases interpreting the FDCPA, "we take note of the staff's position and accord it due weight." *Id.* (citing *Bass*, 111 F.3d at 1327, n. 8).

"debts" under the FDCPA. Applying the analysis in *Newman*, we first must ask whether such contributions are "obligations of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5). Similar to property assessments, the obligation to make unemployment insurance contributions here arises out of "a consensual transaction[ ], where parties negotiate or contract for consumer-related goods or services." *Bass*, 111 F.3d at 1326. Just as the obligation to pay assessments derived from the purchase of the underlying property unit, the obligation to make unemployment insurance contributions derived from the hiring of an employee—in this case a nanny. Thus, the unemployment insurance contributions associated with the hiring of a nanny qualify as "obligation[s] of a consumer to pay money arising out of a transaction."

Although the unemployment insurance contributions meet the first part of the statutory definition of "debt," they do not satisfy the requirement that the "money, property, insurance, or services which are the subject of the transaction" be "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). While the hiring of nanny services, like the purchase of a home in *Newman*, "on that general level" has a personal, family, or household purpose, the *Newman* panel found it relevant to analyze not only whether the purchase of the home had a "personal, family, or household purpose" but whether the derivative obligation, the assessments themselves, likewise satisfied this requirement. In contrast to property assessments, unemployment insurance contributions are not "primarily for personal, family, or household purposes." Rather, in this respect unemployment insurance contributions are more analogous to the taxes in *Staub*. Like taxes, unemployment insurance contributions are used for communal purposes and thus indirectly and remotely benefit the contributor. They are used to fund the State's payment of benefits to Illinois residents during periods of unemployment, a more general purpose than the FDCPA requires. In return for their payment of un-employment insurance premiums to the IDES, contributing employers do not receive individual benefits;[3] instead, the contributors receive only a general, public benefit similar to that associated with the payment of taxes. See *Berman*, 1997 WL 392209, at *2 ("in return for plaintiff's obligation to pay money to the State of Illinois, the state gave plaintiff nothing except the satisfaction of helping other unemployed citizens. [Thus] the FDCPA does not apply as plaintiff's debt did not result from the state providing 'money, property, insurance, or services * * * for personal, family, or household purposes' as required by the FDCPA.").

Plaintiff Berman alleges that the taxes in *Staub*, which were per capita taxes, are distinguishable from unemployment insurance premiums. Plaintiff argues that while a per capita tax does not arise out of an underlying consumer transaction and is owed simply because one is a citizen, the obligation to make unemployment insurance contributions arises out of a transaction between the employer and employee. (Appellant's Br. 16).

We agree with plaintiff that the per capita taxes levied by the Pennsylvania taxing districts in *Staub* present a somewhat different situation than unemployment insurance contributions. However, we disagree that such a difference affects the conclusion that unemployment insurance premiums are not "debts" under the FDCPA.

In *Staub*, in addition to finding that a per capita tax does not meet the "primarily for personal, family, or household purposes" part of the statutory definition, the court found that such a tax does not satisfy the requirement that there be an "obligation * * * arising out of a transaction."

> We believe that, at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass that

---

**3.** As plaintiff has conceded, it is not as if he and his family receive the proceeds of the insurance if his nanny is fired.

type of pro tanto exchange which the statutory definition [of "debt"] envisages.

*Staub*, 626 F.2d at 278.

The per capita tax in *Staub* did not even meet the minimum requirement of the definition of "debt" because there was no consensual transaction associated with the involuntary, statutorily mandated payment. However, the court also reasoned that the taxes were not "primarily for personal, family, or household purposes" since they were used for more general communal purposes. *Id.* Thus, in effect, the *Staub* court had two grounds for rejecting the defendant's suggestion that per capita taxes are "debts" under the FDCPA—there was no transaction creating an obligation to pay and the taxes were not used primarily for personal, family, or household purposes.

Unemployment insurance contributions are distinguishable from per capita taxes in that they meet the first part of the definition of "debt" because there is a consensual transaction, the hiring of an employee, that gives rise to the obligation to make unemployment insurance contributions. However, an obligation will only be considered a "debt" if it meets both statutory requirements. Because the unemployment insurance contributions do not satisfy the requirement that "the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes," they cannot be considered debts under the FDCPA.

Plaintiff further contends that "[t]here is simply no exception in the FDCPA's definition of debt for obligations owed to the government that arise out of [a] consumer transaction." (Appellant's Br. 15). We agree that there is no such exception and that obligations owed to the government may constitute "debts" for purposes of the FDCPA. However, such obligations still must fall within the statutory definition of "debt" and this occurs only where consumers receive money, property, or services "primarily for personal, family, or household purposes" from the government in exchange for their payments. In the cases relied upon by plaintiff, the consumers received either medical care or educational benefits directly from the government in exchange for their payments and thus the money owed to the government met the definition of "debt." For example, in *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), plaintiff received medical services in exchange for her obligation to pay money. Similarly, in *Carrigan v. Central Adjustment Bureau, Inc.*, 502 F.Supp. 468 (N.D.Ga.1980), and *Richardson v. Baker*, 663 F.Supp. 651 (S.D.N.Y.1987), plaintiffs received educational services in exchange for their obligation to pay tuition. The instant case is distinguishable because plaintiff here did not receive a consumer-related good or service such as education or medical care. Rather, plaintiff merely received the satisfaction of helping other unemployed citizens, and thus his obligation did not fall within the FDCPA's definition of "debt."

### III. Conclusion

Based on this Court's analysis in *Newman* and *Bass* and the Third Circuit's decision in *Staub*, we hold that unemployment insurance contributions do not qualify as "debts" under the FDCPA because they do not satisfy the statutory requirement that "the money, property, insurance, or services" underlying the transaction be "primarily for personal, family, or household purposes."

Affirmed.