*Goshen Run Homeowners Association, Inc. v. Cumanda Cisneros*, No. 3, September Term, 2019, Opinion by Booth, J.

**HOMEOWNERS ASSESSMENTS – CONSUMER PROTECTION ACT.** Homeowners association assessments fall within the broad definition of "consumer debt" under the Consumer Protection Act, Maryland Code, Commercial Law Article ("CL"), § 13-301, *et seq.* Moreover, a promissory note containing a confessed judgment clause executed for the purpose of memorializing payment of delinquent homeowners assessments falls squarely within the definition of "consumer credit" under the Consumer Protection Act.

**COLLECTION PROCEEDINGS – CONFESSED JUDGMENTS.** Under the plain language of CL § 13-301(12), the Consumer Protection Act forbids the use of all confessed judgment clauses in contracts related to consumer transactions. A creditor cannot circumvent the protections afforded to a debtor under the Consumer Protection Act by inserting language in the confessed judgment clause, which purports to preserve a debtor's legal defenses.

**RULES OF PROCEDURE – DISMISSAL OF COMPLAINT.** Where a homeowners association lacked the legal authority to file a confessed judgment complaint, the appropriate remedy under Maryland Rule 3-611(b) was dismissal of the case. Although the association may be able to file a separate breach of contract claim under a promissory note by severing the confessed judgment clause from the balance of the note, it was improper under the circumstances to file such an action within the unlawful confessed judgment action.

IN THE COURT OF APPEALS

OF MARYLAND

---

No. 3

September Term, 2019

---

GOSHEN RUN HOMEOWNERS
ASSOCIATION, INC.

v.

CUMANDA CISNEROS

---

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Raker, Irma S.,
   (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Booth, J.
Hotten, Getty and Raker, JJ., dissent.

---

Filed: January 27, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Confessed judgments derive from the ancient legal device of a cognovit note, in which a debtor consents in advance to the holder obtaining a judgment without notice or a hearing. For centuries, the cognovit process has been the subject of much criticism. The United States Supreme Court has noted that the cognovit method has been described as "the loosest way of binding a man's property that was ever devised in any civilized country." *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 177 (1972) (citations omitted).

In Maryland, confessed judgments have been disfavored and have been viewed with circumspection. Given the ease with which a creditor may obtain a confessed judgment and the potential for fraud and abuse, we have liberally considered attacks on confessed judgments. Although confessed judgments have been permitted in the commercial context, the General Assembly prohibits their use in certain consumer transactions. Through Maryland's Consumer Protection Act ("CPA"), the General Assembly has determined that the "use of a contract related to a consumer transaction which contains a confessed judgment clause that waives a consumer's right to assert a legal defense to an action" constitutes an unfair, abusive, or deceptive trade practice and is therefore prohibited. Maryland Code, Commercial Law Article ("CL"), § 13-301(12) (2013).

Homeowners associations ("HOAs") are often placed in a difficult situation of having to undertake collection efforts against lot owners in their communities for delinquent homeowners assessments. To address the problem, the General Assembly has provided HOAs with multiple collection tools, which are codified in the Maryland Homeowners Association Act, Maryland Code, Real Property Article ("RP"), § 11B-101, *et seq.* (the

"HOA Act"). Specifically, the HOA Act permits homeowners associations to collect delinquent assessments through both in rem proceedings under the Maryland Contract Lien Act, as well as in personam proceedings at law.

In this case, we must decide whether a confessed judgment is another enforcement tool that a HOA has at its disposal when seeking to collect delinquent HOA assessments, costs, and attorney's fees. For the reasons set forth in this opinion, we conclude that the General Assembly has not included this enforcement tool in the box. Collection of HOA assessments falls within the broad purview of the Consumer Protection Act, which prohibits the use of confessed judgment clauses for the collection of consumer debts.

## I. BACKGROUND AND PROCEEDINGS BELOW

The Goshen Run Village subdivision ("Goshen Run") is a residential community located in Montgomery County, Maryland. In December 1983, the developer of Goshen Run recorded a Declaration of Covenants and Restrictions ("Declaration") in the land records of Montgomery County, which imposed certain covenants and restrictions upon the lots and conferred certain privileges and obligations upon the lot owners within the subdivision.

### Goshen Run Homeowners Association

The Goshen Run Homeowners Association ("Association") was established as the governing body to carry out the powers and duties set forth in the Declaration. The Board of Directors of the Association is required to adopt an annual operating budget for the Association and may establish annual assessments to cover the costs of maintaining,

repairing, and replacing the common areas and community facilities,[1] as well as any taxes and assessments imposed upon the Association.

Under the Declaration, the Board has the authority to levy assessments on each lot within the subdivision. If a lot owner does not pay an assessment levied under the Declaration, the Association has multiple collection remedies at its disposal. First, the delinquent amount, together with interest and the cost of collection, becomes a continuing lien on the lot belonging to the member against whom the assessment has been levied. Declaration, Article VI, Section 1. In addition, the Association may file a suit against the delinquent lot owner to recover a money judgment for the non-payment of the amount assessed. *Id.* The Board has the authority, by resolution, to establish an interest rate for delinquent assessments, and to impose a late charge. The Declaration further provides that:

> [T]he Association may bring an action at law against the member personally obligated to pay the same, or foreclose on the Lien against the lot or lots then belonging to said member in the manner now or hereafter provided for the foreclosure of mortgages, deeds of trust or other liens on real property in the State of Maryland containing a power of sale or consent to a decree, and subject to the same requirements, both substantive and procedural, or as may otherwise from time to time be provided by law, in either of which events, interest, costs and reasonable attorneys' fees of not less than twenty percent

---

[1] The Declaration describes "common areas" and "community facilities," which are owned or leased by the Association or are otherwise available to the Association "for the use and enjoyment of its members." Article IV, Section 1 of the Declaration creates a right of enjoyment and an appurtenant easement in the common areas for the benefit of each member, subject to certain terms and conditions: "Every member shall have a right and easement of enjoyment in and to the common areas and community facilities and such easement shall be appurtenant to and shall pass with fee title to every lot . . . ."

3

(20%) of the sum claimed shall be added to the amount of each assessment.

Declaration, Article VI, Section 1.

### *Ms. Cisneros and the Confessed Judgment Promissory Note*

Cumanda Cisneros purchased a home in Goshen Run for her principal residence in 2004. Upon purchasing her lot, Ms. Cisneros became obligated to comply with the Declaration. Pursuant to its authority in the Declaration, the Association imposed assessments upon the lots within the subdivision, including Ms. Cisneros's property.

In 2014, Ms. Cisneros became delinquent in her HOA assessment payments and her delinquent account was turned over to the Association's law firm, Andrews & Lawrence Professional Services, LLC ("Andrews"), to pursue collection of the delinquent amount. During the collection process, Ms. Cisneros contacted Andrews and proposed a plan to pay her debt in monthly installments of $126 over approximately six years. The Association's Board accepted the deferred repayment plan and agreed to forbear collection action. Andrews prepared a promissory note ("Promissory Note" or "Note") and mailed it to Ms. Cisneros with instructions to return it signed and notarized within two weeks. In April 2016, Ms. Cisneros signed the Promissory Note,[2] had it notarized, and returned it to the Association's attorneys.

---

[2] Ms. Cisneros executed the Promissory Note with the assistance of a relative. Ms. Cisneros's native language is Spanish. An interpreter was present at the hearings in this matter. At the hearing in the District Court of Maryland sitting in Montgomery County, Ms. Cisneros testified that she did not know what "the confessed judgment provision meant."

4

The Promissory Note, which was titled "Promissory Note and Mortgage," was for the repayment of the amount of $8,733.97, payable in 79 installments. The document also included a mortgage secured by Ms. Cisneros's Goshen Run property. The debt evidenced by the Promissory Note was expressly recited as "delinquent homeowners association assessments on [Ms. Cisneros's Goshen Run property] accrued through March 2016 . . . ." The Promissory Note also referenced future HOA assessments that would come due during the term of the payment period of the Note and recited that the failure to pay those future assessments when they came due would trigger a default of the Promissory Note. In the event of a default, all subsequent fees owed after the execution of the Note would become due and payable and be enforceable by confession of judgment under the Promissory Note.

The Promissory Note contained the following provision:

> D. Confession of Judgment:
> Upon default, the undersigned, CUMANDA CISNEROS, hereby empowers and authorizes any attorney to appear for the undersigned in any court within the United States of America or elsewhere, and confess judgment, or a series of judgments, against the undersigned in favor of GOSHEN RUN HOMEOWNERS ASSOCIATION, INC., for such amounts as may be due and owing thereunder, including the costs of the proceeding and twenty percent (20%) of the outstanding balance as attorney's fees, or such amount as the court shall deem reasonable.
>
> E. Non-Waiver of Legal Defenses.
> I, CUMANDA CISNEROS, do not waive any legal defenses to any action to enforce this promissory note and mortgage.

*Proceedings Below*

Ms. Cisneros defaulted on the Promissory Note. In July 2016, the Association filed a confessed judgment complaint in the District Court of Maryland sitting in Montgomery

County pursuant to Maryland Rule 3-611, attempting to recover the debt memorialized in Ms. Cisneros's Promissory Note. The complaint consisted of the district court's standard form titled "Complaint for Judgment by Confession (Md. Rule 3-611)." As the basis for its complaint, the Association attached the Promissory Note. The standard attestation contained in the affidavit portion of the complaint is required by Md. Rule 3-611(a) and states:

> 8. The instrument does not evidence or arise from a consumer transaction as to which a confessed judgment clause is prohibited by Code, Commercial Law Article § 13-301.

Based on the confessed judgment complaint form, the attached Promissory Note, and the attestation that the debt was not a consumer transaction, the district court entered judgment in the principal amount of $5,594.17 and attorney's fees of $300.

The Association did not serve Ms. Cisneros with the confessed judgment for more than a year. During that time, the Association proceeded to garnish Ms. Cisneros's bank account and record liens against her real property. Ms. Cisneros was finally served with the confessed judgment in December 2017.[3] In January 2018, Ms. Cisneros filed a motion

---

[3] After Goshen Run's debt collection attorneys, Andrews & Lawrence Professional Services, LLC ("Andrews"), issued the writ and recorded the liens against Ms. Cisneros but before they served her with the notice of confessed judgment, Ms. Cisneros initiated a class action lawsuit against Andrews in which she alleges that the practice of obtaining confessed judgments for past-due homeowners assessments pursuant to promissory notes containing confessed judgment clauses violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. Ms. Cisneros filed her class action complaint in the Circuit Court for Montgomery County in October 2017, and the matter was removed to the United States District Court for the District of Maryland in December 2017. As of the date of this opinion, the matter is still pending.

to stay, or in the alternative, to vacate the confessed judgment in the district court.[4]  Ms. Cisneros alleged that the confessed judgment was entered based upon an illegal confessed judgment promissory note arising from a consumer transaction and consumer debt, and therefore was required to be vacated.

In March 2018, following a hearing during which the Association acknowledged and did not contest that the Promissory Note evidenced a consumer debt, the district court granted Ms. Cisneros's motion to vacate the confessed judgment.  In rendering its decision, the district court stated as follows:

> After reviewing all of the memoranda and listening to the arguments of counsel[,] I concur with the Defendant in this matter.  I do believe that this was definitely a consumer transaction which has been consented to but that this [was a] confessed judgment note definitely and the Defendant waived her legal defenses and for that reason I will vacate the judgment.

There were no further proceedings as part of the March 2018 hearing.  After vacating the confessed judgment, the case was set for trial.  Upon receiving the trial notice, Ms. Cisneros filed a motion to dismiss the confessed judgment complaint, arguing that Md. Rule 3-611(b) required dismissal of the complaint given the district court's previous determination that the confessed judgment action violated the CPA.

At the hearing on Ms. Cisneros's motion to dismiss, the district court reaffirmed that the confessed judgment arose from a consumer transaction and was therefore

---

[4] Ms. Cisneros's motion to stay was based upon the federal class action that she had initiated against Andrews.  The district court denied the motion to stay but granted the motion to vacate.

7

prohibited by the CPA. The district court denied Ms. Cisneros's motion to dismiss, and instead severed the confessed judgment provision from the remaining terms of the Promissory Note and permitted the Association leave to file an amended complaint and proceed with a breach of contract action against Ms. Cisneros. The Association filed an amended complaint for breach of contract in May 2018, seeking the same relief claimed in the complaint for confession of judgment plus additional attorney's fees. Following a hearing in June 2018, the district court entered judgment against Ms. Cisneros for $5,352.53, costs of $151, and attorney's fees totaling $1,100.57.

In July 2018, Ms. Cisneros appealed the district court's denial of her motion to dismiss and the judgment entered against her to the Circuit Court for Montgomery County. In January 2019, the circuit court entered a written opinion and order. Specifically, the circuit court found that the payments and the collection of homeowners association dues constituted a consumer transaction under the CPA and that the use of a confessed judgment promissory note to collect the payments was prohibited. The circuit court held that:

> Within the procedural history of this matter, the District Court consistently ruled . . . that the confessed judgment in this case is prohibited. This Court concurs with previous rulings and finds that due to the consumer transaction nature of the agreement between Goshen Run and Ms. Cisneros, the Confessed Judgment cannot stand, which required the complaint to be dismissed.

The Association filed a petition for writ of certiorari, which this Court granted.

8

## II. DISCUSSION

The Association raises four questions on appeal, which we have consolidated and rephrased for clarity as follows:[5]

1. Does the Consumer Protection Act apply to collection efforts by a HOA to collect delinquent HOA assessments?

2. Does § 13-301(12) of the Consumer Protection Act prohibit the use of all confessed judgment clauses in contracts related to consumer transactions?

3. Did the circuit court err when it found that the HOA's filing of its complaint to confess judgment for the payment or collection of HOA assessments violated the Consumer Protection Act, and that therefore,

---

[5] The questions as presented in the writ for certiorari were:

1. Does a confessed judgment clause in a promissory note/forbearance agreement involving homeowners association assessments that expressly preserves the right of the defendant to assert legal defenses, violate the Maryland Consumer Protection Act [("CPA"), Maryland Code, Commercial Law Article, § 13-301, *et seq*.,]?

2. Assuming, *arguendo*, that homeowners association assessments are consumer debts within the meaning of the CPA, if the consideration given by a payee to a promisor in a promissory note is the forbearance of debt collection activity on the antecedent debt, does such a promissory note relate to a "consumer transaction" under the CPA?

3. Assuming, *arguendo*, that the answer to the first question is affirmative, was it appropriate for the district court to invoke a severability provision in the note, sever the confession clause, and proceed to trial on the merits, because the CPA does not provide the remedy of voiding contracts?

4. Did the circuit court misapply Maryland law when it determined that after a confessed judgment is vacated, it is impermissible to permit a trial on the merits on an amended complaint, as that would constitute "another bite at the apple," and that such complaint should be dismissed pursuant to [Maryland] Rule 3-611(b)?

9

the proper procedure was the dismissal of the complaint pursuant to Maryland Rule 3-611(b)?

For the reasons set forth herein, we answer questions one and two in the affirmative. With respect to question 3, we agree that under the procedural posture of this case, dismissal of the unlawful confessed judgment action was appropriate. We hold that HOA assessments fall within the broad definition of "consumer debt" under the CPA. Moreover, the Promissory Note constituted an extension of credit to Ms. Cisneros to pay delinquent HOA assessments, which falls squarely within the definition of "consumer credit" under the CPA. We hold that under the plain language of CL § 13-301(12), the CPA forbids the use of all confessed judgment clauses in contracts related to consumer transactions, and that a creditor cannot circumvent the protections afforded to a debtor under the CPA by inserting language in the confessed judgment clause which purports to preserve a debtor's legal defenses. We hold that because the Association lacked the legal authority to file a confessed judgment complaint, the appropriate remedy under Maryland Rule 3-611(b) was dismissal of the case. However, we hold that the dismissal of the confessed judgment action should have been without prejudice to the Association's right to file a separate breach of contract action severed from the confessed judgment clause. Although the Association may be able to file a separate breach of contract claim under the Promissory Note by severing the confessed judgment clause from the balance of the Note, it was improper to attempt to file such an action within the unlawfully filed confessed judgment action.

10

## A.    *Standard of Review*

When an action has been tried without a jury, this Court reviews the action on both the law and the evidence. Md. Rule 8-131(c). The trial court's factual findings are accepted unless clearly erroneous. *Id.* The appellate court affords no deference to the legal conclusions of the district court and the circuit court. *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.,* 378 Md. 337, 342–43 (2003). We review their interpretations of the relevant statutes de novo. *Id.* at 343. As this case involves purely questions of law, our standard of review is de novo.

## B.    *Parties' Contentions*[6]

The Association argues that HOA assessments do not constitute "consumer debt" under the CPA. The Association asserts that, even if HOA assessments are considered consumer debt under the CPA, "such status is of no import" because the Promissory Note constituted a new and distinct obligation, enforceable in its own right and according to its own terms. The Association contends that the Promissory Note is not related to a "consumer transaction" and does not constitute the "collection of consumer debts" under the CPA. The Association further argues that the execution of the Promissory Note for the payment of past-due assessments does not constitute the extension of consumer credit under the CPA. The Association characterizes the Promissory Note as a forbearance agreement—in other words, an agreement to *not* engage in debt collection—which it

---

[6] In addition to the contentions raised by the parties, the Attorney General of Maryland filed an Amicus Curiae Brief supporting the position taken by Ms. Cisneros.

11

contends cannot be considered an unfair or deceptive trade practice in the collection of consumer debts under CL § 13-303(5).

The Association claims that, even if the collection of HOA assessments falls within the purview of the CPA, its confessed judgment clause is not prohibited under the CPA because CL § 13-301(12) does not prohibit the use of all confessed judgments in consumer contracts; rather, it prohibits only a subset of confessed judgment clauses "that waive the consumer's right to assert a legal defense to an action." The Association contends that it escapes the reach of the CPA because the Promissory Note contains a clause whereby Ms. Cisneros agreed that she did "not waive any legal defenses to any action to enforce" the Note. The Association further contends that under the language in its confessed judgment clause, Ms. Cisneros retains all her rights under the law to assert any defenses she wishes to raise under Md. Rule 3-611.

Finally, the Association argues that, even if the CPA applies to its collection efforts and its confessed judgment clause violates the CPA, it should nonetheless be permitted to file an amended complaint within its confessed judgment suit and proceed with a breach of contract claim under the Promissory Note with the confessed judgment clause severed from the remainder of the agreement.

In response, Ms. Cisneros argues that HOA assessments are consumer in nature and fall within the ambit of the CPA. She asserts that the assessments imposed by the Association are for the care and maintenance of the Goshen Run common areas, which she has the right to use and enjoy and from which she derives a personal benefit. As such, Ms. Cisneros claims that the assessments fall within the broad definition of "consumer debt"

12

under the CPA because the assessments are incurred for her "personal, family, and household needs." Ms. Cisneros also contends that the Promissory Note constitutes an extension of "consumer credit" under the CPA because the Note allows her to repay the delinquent HOA assessments pursuant to a specific payment plan.

As for the enforceability of the confessed judgment clause under the CPA, Ms. Cisneros contends that under the plain language of CL § 13-301(12), the General Assembly intended to prohibit the use of all confessed judgment clauses in contracts related to consumer transactions, not just a subset of confessed judgment clauses. Ms. Cisneros further asserts that despite the language in the confessed judgment clause which purports to preserve her ability to raise defenses to the entry of the confessed judgment, the very essence of a confessed judgment process necessarily involves the waiver of key defenses such as service of process, venue, and personal jurisdiction, which are minimal due process protections.

Finally, Ms. Cisneros claims that the circuit court did not err in holding that dismissal of the confessed judgment complaint was the appropriate remedy. She contends that Md. Rule 3-611(b) mandates dismissal of the unlawful action. She asserts that the Association should not be permitted to proceed on a breach of contract action severed from the confessed judgment clause because the General Assembly intended to prohibit all consumer contracts containing a confessed judgment clause. Accordingly, she contends that principles of severability do not apply here.[7]

---

[7] Ms. Cisneros also argues that the Association's use of a confessed judgment is unconstitutional as applied to her circumstances under the Supreme Court's holdings in

13

*C.* *Analysis*

To determine whether a HOA may use a confessed judgment clause to collect delinquent HOA assessments from a lot owner, we must first determine whether the CPA applies to the HOA's collection efforts. Specifically, we must determine whether, under the CPA, Ms. Cisneros is a "consumer"; whether the HOA assessments constitute "consumer debt"; and whether the confessed judgment note constitutes an extension of "consumer credit." As part of our analysis, it is necessary to consider not only the language of the CPA but also the applicable provisions of the Maryland Homeowners Association Act.

## 1. The Maryland Homeowners Association Act

The General Assembly enacted the Maryland Homeowners Association Act ("HOA Act") in 1987. *See* 1987 Laws of Maryland, chapter 321. In its present form, the Act is set forth in Maryland Code, Real Property Article ("RP"), § 11B-101, *et seq.* (2015). The HOA Act applies to the sale of lots that are subject to a declaration of a HOA. RP § 11B-102. The provisions of the HOA Act extend far beyond the initial purchase of a lot or the resale of a lot within a development. The HOA Act also provides the legislative framework

---

*D.H. Overmyer v. Frick Co.*, 405 U.S. 174 (1972) and *Swarb v. Lennox*, 405 U.S. 191 (1972) and our holding in *Billingsley v. Lincoln National Bank*, 271 Md. 683 (1974). Ms. Cisneros contends that the waiver of her due process rights to notice and personal jurisdiction were not "voluntary, knowing, and intelligently made, or an intentional relinquishment or abandonment of a known right or privilege." *Overmyer*, 405 U.S. at 186 (internal citations omitted). Ms. Cisneros testified through an interpreter that she did not understand what a confessed judgment clause meant. Because we hold that a HOA cannot use a confessed judgment clause to collect delinquent HOA assessments and that the appropriate remedy was dismissal of the case under Maryland Rule 3-611(b), we do not need to reach the constitutionality of the entry of a confessed judgment as applied to Ms. Cisneros.

14

under which HOAs[8] operate and manage their affairs. A HOA is governed by its governing body[9] in accordance with its declaration,[10] as well as other corporate documents such as its bylaws, and rules and regulations promulgated and adopted in accordance with the declaration and other governing documents.

The HOA Act contains provisions which address many operational and governance aspects of a development that are subject to a HOA declaration, such as the notice and conduct of meetings of the HOA or its governing body, requirements for maintaining books and records of the association, and the establishment of an annual budget for repair and maintenance of common areas. RP §§ 11B-111, 112, 112.2.

In connection with the establishment of a budget, the HOA has the authority to adopt assessments and charges to cover the expenses for maintaining and repairing common areas.[11] Under its declaration, the homeowners association can establish and impose upon

---

[8] "Homeowners association" is defined under the HOA Act as "a person having the authority to enforce the provisions of a declaration" and "includes an incorporated or unincorporated association." Maryland Code, Real Property Article ("RP"), § 11B-101(i).

[9] "Governing body" is defined as "the homeowners association, board of directors, or other entity established to govern the development." RP § 11B-101(h).

[10] The declaration of a HOA is the genesis of its authority. The HOA Act defines the "declaration" as: "an instrument, however denominated, recorded among the land records of the county in which the property of the declarant is located, that creates the authority for a homeowners association to impose on lots or on the owners or occupants of lots, . . . any mandatory fee in connection with the provision of services or otherwise for the benefit of some or all of the lots, the owners or occupants of lots, or the common areas." RP § 11B-101(d)(1).

[11] Under the HOA Act, "common areas" are defined as "property which is owned or leased by a homeowners association." RP § 11B-101(b).

any lot, or on the owners or occupants of any lot, mandatory assessments or fees to cover "the provision of services or otherwise for the benefit of the owners of the lots, the owners or occupants of the lots, or the common areas."  RP § 11B-101(d)(1).

Section 11B-117(a) of the HOA Act states that, "[a]s provided in the declaration, a lot owner shall be liable for all homeowners association assessments and charges that come due during the time that the lot owner owns the lot."  To encourage the payment of timely assessments, the HOA Act gives a HOA the authority to establish in its declaration or bylaws "a late charge of $15 or one-tenth of the total amount of any delinquent assessment or installment, whichever is greater, provided the charge may not be imposed more than once for the same delinquent payment and may be imposed only if the delinquency has continued for at least 15 calendar days."  RP § 11B-112.1.

With respect to enforcement, the HOA Act permits a HOA to establish provisions in its declaration for collection of delinquent assessments through both in rem and in personam proceedings.  Section 11B-117(b) provides:

> *Enforcement. —* In addition to any other remedies available at law, a homeowners association may enforce the payment of the assessments and charges provided in the declaration by the imposition of a lien on a lot in accordance with the Maryland Contract Lien Act.

The express language of the HOA Act authorizes the governing body of a HOA to take enforcement action to collect delinquent assessments and charges owed by the individual lot owners within the development.  As part of its collection efforts, the HOA is authorized to assess late charges, to impose a lien on the lot in accordance with the

16

Maryland Contract Lien Act, Md. Code, Real Property Article, § 14-201 *et seq.* (2013), and to file suit against the individual lot owner for the amount of the debt owed.

In 2007, the HOA Act was amended to add RP § 11B-115, titled "Enforcement Authority of Division of Consumer Protection." ("2007 Amendment"). The 2007 Amendment added a specific definition of "consumer" to the HOA Act, which defines consumer as "an actual or prospective purchaser, lessee, assignee, or recipient of a lot in a development." RP § 11B-115(a). The 2007 Amendment provides that the section "is intended to provide minimum standards for protection of consumers in the State." RP § 11B-115(b). The 2007 Amendment brought the HOA Act within the specific enforcement authority of the Office of the Attorney General under the CPA. Specifically, the 2007 Amendment states that "to the extent that a violation of any provision of this title affects a consumer, that violation shall be within the scope of the enforcement duties and powers of the Division of the Consumer Protection of the Office of the Attorney General, as described in Title 13 of the Commercial Law Article." RP § 11B-115(c).

### 2. Collection of HOA Assessments Falls Within the Scope of the Consumer Protection Act

The Consumer Protection Act is set forth in CL § 13-101, *et seq.* The purpose of the CPA is to "set certain minimum standards for the protection of consumers across the State . . . ." CL § 13-102(b)(1). In enacting the CPA, the General Assembly determined that the State "should take strong protective and preventative steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices and to prevent these practices from occurring in Maryland." CL § 13-102(b)(3). The General

17

Assembly further instructed that the CPA shall be "construed and applied liberally to promote its purpose." CL § 13-105. To that end, the CPA prohibits all trade practices that are unfair, abusive, or deceptive in, among other things, the collection of consumer debts. *See* CL §§ 13-301(14)(iii); 13-303(5).

Section 13-303 of the CPA generally prohibits unfair, abusive, or deceptive trade practices, and § 13-301 contains a nonexclusive list of practices that are defined to be unfair or deceptive. Practices defined to be unfair, abusive, or deceptive include the "[u]se of a contract related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action." CL § 13-301(12).

Under the CPA, "consumer credit," "consumer debts," "consumer goods," "consumer realty," and "consumer services" are defined, respectively, as "credit, debts or obligations, goods, real property, and services which are primarily for personal, household, family or agricultural purposes." CL § 13-101(d)(1). Similarly, "consumer" is defined as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." CL § 13-101(c). "Merchant" is defined as "a person who directly or indirectly offers or makes available to any consumers any consumer goods, consumer services, consumer realty, or consumer credit." CL § 13-101(g)(1).[12]

---

[12] Although the term "consumer transaction" is not expressly defined within the Consumer Protection Act, it is defined in a closely related statute—the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Comm. Law Art. § 14-201 *et seq.*—as "any transaction involving a person seeking or acquiring real or personal property, services, money or credit for personal, family, or household purposes." CL § 14-201(c).

18

### *Ms. Cisneros is a "consumer" under the CPA and the HOA Act*

Ms. Cisneros falls within the definition of "consumer" under the CPA.  She is a purchaser and recipient of consumer services and consumer realty, which are primarily for her household and family purposes.  Ms. Cisneros also falls within the definition of "consumer" under the HOA Act, which defines "consumer" as "an actual or prospective purchaser, lessee, assignee, or recipient of a lot in a development."  RP § 11B-115(a).  Under the HOA Act, Ms. Cisneros is an "actual purchaser" of a lot.  Immediately upon her purchase of a lot, she became subject to the Declaration, including an obligation to pay assessments.  In other words, Ms. Cisneros was legally obligated to pay the HOA assessments the moment her deed was signed.

### *HOA assessments are "consumer debt"*

The HOA assessments and charges fit within the broad definition of "consumer debt" under the Consumer Protection Act.  The assessments are established to cover the repair, maintenance, and expenses associated with the "Common Areas" and "Community Facilities," which are defined under the Goshen Run Declaration as "all real property owned or leased by the Association or otherwise available to the Association *for the benefit, use and enjoyment of its members.*"  Declaration, Article IV, Section 1(c) (emphasis added).  Under the Goshen Run Declaration, each member has an appurtenant "right and easement of enjoyment in and to the common areas and community facilities . . . ."  Declaration, Article IV, Section 1.  As a lot owner, Ms. Cisneros has a right to use and enjoy the common areas and community facilities, and a concomitant duty to pay the assessments or fees—debts which are incurred "primarily for personal, household [or]

19

family . . . purposes." CL § 13-101(d)(1). As noted above, Ms. Cisneros's obligation to pay the HOA assessments arose in connection with the purchase of her property, even if the timing and amount of the particular assessment was yet to be determined. The fact that the assessments may benefit more than a single household does not change their character as debts incurred primarily for personal, household or family purposes.

In arriving at this conclusion, we note that several federal courts construing the parallel federal statute, and several state supreme courts analyzing similar state consumer protection statutes, have reached the same result. Although not binding, these cases are instructive.

Under the federal Fair Debt Collection Practices Act ("FDCPA"), debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C.A. § 1692a(5).

The Third Circuit was the first to construe this definition. In *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir. 1987), that court concluded that, to be a debt, there must be an actual extension of credit plus a deferred payment obligation, i.e., a transaction in which "a consumer is offered or extended the right to acquire money or property." *Id.* at 1168–69.

Several courts thereafter used *Zimmerman's* "extension of credit" analysis to conclude that condominium or HOA assessments are not debt because the unit owner is required to pay the dues and assessments up front, prior to the association providing any services in return.

20

*See, e.g.*, *Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995) (condominium association fees); *Nance v. Petty, Livingston, Dawson & Devening*, 881 F. Supp. 223 (W.D. Va. 1994) (HOA dues); *see also Bryan v. Clayton*, 698 So. 2d 1236 (Fla. Dist. Ct. App. 1997) (holding that condominium association fees are not debt under Florida state law).

*Zimmerman's* extension of credit argument has come under sharp criticism. In *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997), the court rejected *Zimmerman's* analysis, stating that "because the statute's definition of 'debt' focuses on the transaction creating the obligation to pay, it would seem to make little difference under that definition that unit owners are generally required to pay their assessments first, before any goods are provided by the association." The court in *Newman* concluded that HOA assessments are indeed debt under the FDCPA. *Id.* at 481–82. The court reasoned that:

> By paying the purchase price and accepting title to their home, the [homeowners] became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association . . . . It is therefore clear that the obligation to pay in these circumstances arose in connection with the purchase of the homes themselves, even if the timing and amount of the particular assessments was yet to be determined.

*Id.* at 481. The court in *Newman* further explained that:

> There can be little doubt that the subject of those transactions [the purchase of a home] had a personal, family, or household purpose. More specifically, however, we also believe that the assessments themselves satisfy the statutory requirement. To the extent that the assessments were to be used to improve or maintain commonly-owned areas, that purpose, too, qualifies as "personal, family, or household." In our view, when a

21

> special assessment is used to pay for services like snow removal from a common walkway or landscaping of a common yard, the assessments are for a household purpose even if more than a single household benefits.

*Id.*

Since then, nearly every state or federal court that has considered the issue has concluded that HOA assessments or dues are properly classified as consumer debt. *See, e.g., Agrelo v. Affinity Mgmt. Servs., LLC,* 841 F.3d 944, 951 (11th Cir. 2016) (holding that the term "debt" under both the FDCPA and the Florida Consumer Collection Practices Act was broad enough to encompass homeowners' obligations to pay a fine imposed by a HOA pursuant to the association's governing documents); *Haddad v. Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 291 (6th Cir. 2012) (holding that condominium owner's obligation to pay assessments constituted "debt" under the FDCPA and the Michigan Debt Collection Practices Act); *Ladick v. Gemert*, 146 F.3d 1205, 1206-7 (10th Cir. 1998) (concluding that an assessment owed to a condominium association qualifies as 'debt' within the meaning of the Fair Debt Collection Practices Act based upon the express finding that "although the assessment at issue here is used to maintain and repair the common area, it nevertheless has a primarily personal, family, or household purpose"); *Taylor v. Mount Oak Manor Homeowners Ass'n,* 11 F. Supp. 2d 753, 755 (D. Md. 1998) (concluding that HOA assessments are "debts" under the FDCPA); *Garner v. Kansas*, No. 98-1274, 1999 WL 262100, at *2 (E.D. La. 1999) ("Upon review of the FDCPA and the case law discussing the issue, the Court concludes that condominium fees do constitute 'debts' under the FDCPA."); *Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp. 2d 932, 934

22

(D. Ariz. 1999) (adopting *Newman* reasoning that HOA assessments are collected in order to improve and maintain commonly owned areas by each unit owner, which directly benefit each household in the development. As a result, the assessments have a "personal, family, or household purpose"); *Thies v. Law Offices of William A. Wyman*, 969 F. Supp. 604, 608 (S.D. Cal. 1997) (applying the *Newman* rationale and concluding "homeowner association fees for maintenance and improvement of common areas within a housing development are a service primarily for personal, family, and household purposes"); *Reid v. Ayers*, 138 N.C. App. 261, 264 (N.C. 2000) (holding that HOA assessments constitute "debt" under the North Carolina Debt Collection Act); *Loigman v. Kings Landing Condo. Ass'n*, 324 N.J. Super. 97, 105–07 (N.J. Ch. Div. 1999) (holding that condominium assessments fall within the scope of the FDCPA and that the association's attorney violated the FDCPA by failing to halt its collection efforts with respect to unpaid assessments after the unit owner questioned and sought verification of the amount).

Our holding that HOA assessments constitute consumer debt because they are incurred primarily for personal, household, and family purposes is consistent with the majority of the federal courts interpreting similar language under the FDCPA, as well as state courts interpreting similar consumer protection statutes.

### *The Promissory Note constituted an extension of "consumer credit"*

In addition to delinquent HOA assessments constituting "consumer debt" under the CPA, the Promissory Note also constituted an extension of credit to Ms. Cisneros to pay the HOA assessments, which falls squarely within the definition of "consumer credit" under the CPA. Whether a transaction involves a consumer good, service, or loan

23

depends upon the purpose for which a good, service, or loan is used. *See Boatel Indus., Inc. v. Hester*, 77 Md. App. 284, 303 (1988). As discussed above, the CPA defines "consumer credit" as credit "primarily for personal, household, family, or agricultural purposes." CL § 13-101(d)(1).

The CPA's definition of "consumer credit" is consistent with the definition of "credit" and "extension of credit" in the context of other consumer debt statutes codified in the Commercial Law Article. *See* Maryland Equal Credit Opportunity Act, CL § 12-701(d) ("'Credit' means the right guaranteed by a creditor to a debtor to: (1) Defer payment of a debt; (2) Incur a debt and defer its payment; or (3) Purchase property or services and defer payment for it."); *see also* Maryland Credit Services Businesses Act, CL § 14-1901(f) ("'Extension of credit' means the right to defer payment of debt or to incur debt and defer its payment, primarily for personal, family, or household purposes."). Given its broad language, we read CL § 13-101(d) to apply generally to transactions in which repayment of personal, household, family, and agricultural debts are deferred.

The language in the Promissory Note clearly reflects that it consists of an extension of credit for the payment of HOA assessments—a debt incurred by Ms. Cisneros for personal, household and family purposes:

> For value received and delinquent homeowners association assessments on the unit at … (the "Subject Property") accrued through March 2016, the undersigned, Cumanda Cisneros, (the PROMISSOR), promise(s) to pay to the order of GOSHEN RUN HOMEOWNERS ASSOCIATION, INC., the sum of EIGHT THOUSAND SEVEN HUNDRED THIRTY-THREE DOLLARS AND NINETY-SEVEN CENTS ($8,733.97), by SEVENTY-NINE (79) payments as follows: . . .

24

On its face, the Promissory Note is comprised of Ms. Cisneros's acknowledgment of and agreement to repay the delinquent HOA assessments under a specific plan. As such, the Promissory Note is an extension of credit to Ms. Cisneros. *Cf. Schinnerer v. Maryland Ins. Admin.*, 147 Md. App. 474, 492–93 (2002) (recognizing that promissory notes made by an insurance agent to the order of the insurance company to pay premiums collected after they were due constituted an extension of credit), *cert denied Schinnerer v. Maryland Ins. Admin.*, 373 Md. 408 (2003). Contrary to Goshen Run's assertions, the incorporation of the past-due HOA assessments into the Promissory Note did not transform the underlying consumer nature of the debt. Accordingly, the Promissory Note constitutes an extension of "consumer credit," which falls within the purview of the Consumer Protection Act.

In conclusion, we hold that the collection of HOA assessments falls within the purview of the CPA.[13] The HOA assessments are imposed for the maintenance of common

---

[13] Our holding that the collection of HOA assessments falls within the scope of the CPA is consistent with our decision in *MRA Property Management, Inc. v. Armstrong*, 426 Md. 83, 112 (2012). In *MRA*, we held that a condominium association could be liable under the CPA for providing misleading budgets—including assessments—to prospective condominium purchasers. The Court rejected the condominium management company's argument that its compliance with the disclosure obligations of the Maryland Condominium Act, Md. Code, Real Prop. Art. § 11-101 *et seq.* insulated them from liability for false and deceptive trade practices. The Court opined that *both* statutes protected prospective purchasers of condominium units:

> The Maryland Condominium Act, in Section 11-135, creates duties for the [property management company] and the Association in the sale of a condominium unit. The Consumer Protection Act, on the other hand, establishes boundaries beyond which the [property management company] and the Association may not go, unless they wish to be liable for deceptive or unfair trade practices. The Maryland

25

areas, which Ms. Cisneros has the right to use and enjoy. She became obligated to pay these debts the moment her deed was signed. She is the purchaser of realty (her personal residence) and consumer services (the maintenance of the common areas over which she has an easement and a right to use and enjoy). Ms. Cisneros falls within the definition of "consumer" under both the HOA Act and the CPA. The assessments fall within the broad definition of "consumer debt" under the CPA because they are debts primarily incurred for her personal, household, and family purposes. Additionally, the Promissory Note constituted an extension of credit to pay the HOA assessments. Through the Promissory Note, the Association has extended credit for her to pay the HOA assessments pursuant to a payment plan.

### 3. Enforceability of Confessed Judgment Note Under the Consumer Protection Act

Having determined that the Consumer Protection Act applies to the collection of Ms. Cisneros's HOA assessments, we must now determine whether the Association's attempt to collect this debt under the confessed judgment clause of the Promissory Note violated the CPA.

The CPA prohibits all trade practices that are unfair, abusive, or deceptive in, among other things, the collection of consumer debts. *See* CL §§ 13-301(14)(iii); 13-303(5). Section 13-303 of the CPA generally prohibits unfair, abusive, or deceptive trade practices,

---

Condominium Act requires disclosures, while the Consumer Protection Act mandates that those disclosures not be deceptive.

*Id.* at 112–13.

26

and Section 13-301 contains a nonexclusive list of practices that are defined to be unfair or deceptive. *Golt v. Phillips*, 308 Md. 1, 8–9 (1986). These acts and practices include the "[u]se of a contract related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action." CL § 13-301(12).

The Association argues that, under the CPA, not all confessed judgment clauses are prohibited. Rather, the Association's position is that, under the plain language of CL § 13-301(12), only confessed judgment clauses "that waive the consumer's right to assert legal defenses" are considered unfair or deceptive and therefore unlawful under CL §13-303(5). According to the Association, the confessed judgment provision contained in the Promissory Note is not an unfair or deceptive trade practice under the CPA because the Note contained the following provision immediately after the confessed judgment clause:

> E.    Non-Waiver of Legal Defenses.
> I, CUMANDA CISNEROS, do not waive any legal defenses
> to any action to enforce this promissory note and mortgage.

The Association contends that under this provision, Ms. Cisneros retained all her rights under the law to assert defenses to the enforcement of the Note by confession of judgment. Accordingly, the Association argues that the confessed judgment clause contained in the Promissory Note does not violate the CPA.

Ms. Cisneros argues that the confessed judgment provision in the Promissory Note violates the CPA. Ms. Cisneros contends that the Association's attempt to avoid the CPA by adding subsection E. to the Note, which purports to preserve Ms. Cisneros's defenses,

27

is meaningless because the very nature of the confessed judgment process necessarily involves a waiver of significant legal defenses.

Before we analyze the language set forth in CL § 13-301(12), it is instructive to provide some background related to confessed judgments, as well as the process for obtaining a confessed judgment under the Maryland Rules of Procedure.

### *Confessed Judgments—Background*

Confessed judgments derive from the ancient legal device known as the "cognovit note," dating back to at least William Blackstone's time, by which the debtor consents in advance to the holder's obtaining a judgment without notice to the debtor or a hearing. *Overmyer*, 405 U.S. at 176. In *Schlossberg v. Citizens Bank*, 341 Md. 650, 655 (1996), this Court summarized the function of a judgment by confession:

> A confession of judgment clause in a debt instrument is a device designed to facilitate collection of a debt. It is a provision by which debtors agree to the entry of a judgment against them without the benefit of a trial in the event of a default on the debt instrument. As a general rule, a judgment by confession is entitled to the same faith and credit as any other judgment.

(internal citations omitted). However, given the ease with which a creditor may obtain a confessed judgment, we have been liberal in considering attacks on confessed judgments. Specifically, we have concluded that:

> Because the widespread practice of including a provision authorizing a confessed judgment in promissory notes lends itself to fraud and abuse . . . this Court has made clear that judgments by confession are to be "'freely stricken out on motion to let in defenses.'"

28

*Schlossberg*, 341 Md. at 655 (citing *Keiner v. Commerce Trust Co.*, 154 Md. 366, 370 (1927) (citation omitted)). Even in business transactions involving commercial debts, we have recognized that "'the practice of including in a promissory note a provision authorizing confession of judgment lends itself far too readily to fraud and abuse.'" *Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211, 230–31 (2010) (quoting *Garliss v. Key Fed. Sav. Bank*, 97 Md. App. 96, 103 (1993) (citing *Keiner*, 154 Md. at 366)).

The ability for the confessed judgment process to lead to fraud, abuse, and unfair results is obvious from the nature of the proceeding. Unlike a typical civil action, a confessed judgment is entered prior to service on the defendant and without a trial. *See* Md. Rule 2-611; 3-611. It is entirely ex parte. Although the rules provide a mechanism for the defendant to move to open, vacate, or modify the judgment within 30 days after service of the notice of a judgment,[14] the debtor's defenses are limited. *See NILS, LLC v. Antezana*, 171 Md. App. 717, 728–29 (2006) (noting that meritorious defenses that can be raised by a defendant in a post-judgment attack pursuant to Md. Rule 2-611(c) include only the execution of the note itself and the amount due).

Under the confessed judgment procedure, all the defendant's pre-judgment defenses are waived. For example, Md. Rule 2-322 sets forth many legal defenses that a defendant can raise prior to the entry of judgment, which include: lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, and failure

---

[14] Maryland Rules 2-611 and 3-611 establish identical procedures in the District Court and Circuit Courts of Maryland for obtaining a confessed judgment, as well the courts' ability to open, vacate, modify, or strike a judgment upon motion of a defendant after entry.

29

to state a claim upon which relief can be granted. Because many of these defenses provide fundamental due process protections, case law makes clear that a confessed judgment clause is unconstitutional unless the promisor waives his or her due process rights.

In 1972, the United States Supreme Court decided two companion cases on the same day, both of which challenged the constitutionality of the confessed judgment process: *D.H. Overmyer v. Frick*, 405 U.S. 174 (1972) (Ohio confessed judgments) and *Swarb v. Lennox*, 405 U.S. 191 (1972) (Pennsylvania confessed judgments). Subsequently, in 1974, this Court analyzed Maryland's confessed judgment procedure in light of *Overmyer* and *Swarb*. These cases are instructive in understanding the constitutional limitations associated with the enforcement of confessed judgment clauses.

In *Overmyer*, the Supreme Court considered the constitutionality of Ohio's confessed judgment procedure. In that case, both parties were corporations which bargained at arm's length before a cognovit clause was included in a reformed contract. The debtor argued that the cognovit process, whereby the debtor, in advance of default, waives service of process and authorizes entry of judgment, offends the Due Process Clause of the Fourteenth Amendment. The Supreme Court held that Ohio's confessed judgment procedure did not violate Overmyer's due process rights under the Fourteenth Amendment because the right to receive notice prior to the entry of civil judgment is subject to waiver. The Court held that under the facts of the case, Overmyer, a sophisticated warehousing corporation, had "voluntarily, intelligently, and knowingly waived the rights it otherwise possessed to prejudgment notice and hearing . . . ." *Id.* at 187. The Court cautioned, though, that "[o]ur holding . . . is not controlling precedent for

30

other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." *Id.* at 188.

In a companion case to *Overmyer*, the Supreme Court considered the constitutionality of Pennsylvania's confessed judgment procedure in a class action brought by Pennsylvania citizens who had signed documents containing confessed judgment clauses. *Swarb v. Lennox*, 405 U.S. 191 (1972). The lower court held that the Pennsylvania confessed judgment process was not facially unconstitutional. However, based upon the evidence presented, the lower court held that a class action could be maintained on behalf of Pennsylvania residents who earn less than $10,000 annually, and who signed consumer financing or lease contracts containing a confessed judgment clause. The lower court held that the Pennsylvania practice of confessing judgments against the designated class was unconstitutional against a member of that class in the absence of a showing that the debtor "intentionally, understandably, and voluntarily waived" his rights under Pennsylvania law.

On appeal, the sole issue presented to the Supreme Court was whether the Pennsylvania confessed judgment statute was facially unconstitutional. The Supreme Court cited to *Overmyer* and held that the statute was not unconstitutional on its face. The Supreme Court did not reach the rest of the merits of the case because no cross appeal was taken. Although the Supreme Court did not address the merits of the lower court's opinion, the Court reiterated that the *Overmyer* decision was not controlling precedent for other facts of other cases. *Id.* at 201.

31

After the Supreme Court's decisions in *Overmyer* and *Swarb*, this Court considered the constitutionality of the Maryland confessed judgment rules in *Billingsley v. Lincoln National Bank*, 271 Md. 683 (1974). Like the parties in *Overmyer*, *Billingsley* involved sophisticated parties—a corporate borrower and a commercial bank. This Court specifically relied upon the Supreme Court's analysis in *Overmyer* and *Swarb*, stating that "[f]ortunately, we are not required to chart a new course dealing with this important contention, since the Supreme Court has recently addressed itself to the very issue presented here." *Billingsley*, 271 Md. at 687. We held that the Maryland confessed judgment rules were not unconstitutional on their face. *Id.* at 692. We further held that the debtor offered no evidence to establish that the confessed judgment procedure was unconstitutional as applied under the facts of that case. In that situation, we held that the instrument was not a contract of adhesion, given the original face amount of the note ($46,000) and the fact that one of the appellants signed the note as the vice president of the corporate maker. This Court declined to remand the case to determine whether the appellants knowingly and intelligently waived their rights to notice, finding that under the facts of the case, appellants had such an opportunity at the hearing on their motion to vacate.

The Supreme Court's decisions in *Overmyer* and *Swarb*, and our decision in *Billingsley* make clear that, although the confessed judgment process is not unconstitutional on its face, there are situations in which the judgment may be challenged if the debtor did not knowingly, intelligently, and voluntarily waive his or her rights prior to execution of the contract or note. These situations exist where the contract is one of

adhesion, there is great disparity in bargaining power, or the debtor receives nothing for the cognovit provision.

### *1981 Amendment to the Consumer Protection Act*

Against the backdrop of the Supreme Court cases of *Overmyer* and *Swarb*, and our case of *Billingsley*, in 1981, the General Assembly amended the Consumer Protection Act to prohibit the use of confessed judgment clauses "related to a consumer transaction" by adding what is now CL § 13-301(12) through the enactment of 1981 Laws of Maryland, chapter 388 ("H.B. 692"). We must determine whether the General Assembly intended to prohibit the use of *all* confessed judgment clauses in contracts related to consumer transactions or, as the Association argues, only intended to prohibit the use of a subset of confessed judgment clauses that include a waiver of a consumer's right to assert any legal defense to such an action. For the reasons set forth below, we hold that all confessed judgment clauses are prohibited in contracts related to consumer transactions.

"The ultimate objective of our analysis is to extract and effectuate the actual intent of the Legislature in enacting the statute." *Reier v. State Dep't of Assessments & Taxation*, 397 Md. 2, 26 (2007) (citing *Deville v. State*, 383 Md. 217, 223 (2004)). "This process begins with an examination of the plain language of the statute." *Id.* In *Koste v. Oxford*, we summarized our statutory construction analysis as follows:

> The primary goal of statutory construction is "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision[.]" In doing so, we first look to the "normal, plain meaning of the language of the statute," read as a whole so that "no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory[.]" If the language of a statute is clear and

33

unambiguous, we "need not look beyond the statute's provisions and our analysis ends." Where the language of the statute is ambiguous and may be subject to more than one interpretation, however, we look to the statute's legislative history, case law, purpose, structure, and overarching statutory scheme in aid of searching for the intention of the Legislature.

431 Md. 14, 25–26 (2013) (citing *Whitley v. Md. State Bd. of Elections*, 429 Md. 132, 149 (2012) (additional internal citations omitted)).

We hold that under the plain language of the statute, the CPA prohibits the use of all confessed judgment clauses in consumer transactions because the very essence of a confessed judgment clause *requires* a waiver of a "consumer's right to assert a legal defense to an action." CL § 13-301(12). In *Schlossberg v. Citizens Bank of Maryland*, we explained that "[a] confession of judgment clause in a debt instrument . . . is a provision by which debtors agree to the entry of judgment against them without the benefit of a trial in the event of a default on the debt instrument." 341 Md. 650, 655 (1996). A confessed judgment, by its inherent attributes, mandates that a debtor waive his or her right to assert any pre-judgment defenses including lack of venue, personal jurisdiction, and service of process. These pre-judgment defenses are significant and are intended to protect an individual's right to due process of law. *See Flanahan v. Dep't of Human Res.*, 412 Md. 616, 624 (2010) ("The Maryland Rules governing service of process are 'declaratory of the basic requirements of due process of law . . .' and the 'failure to comply with those Rules constitutes a jurisdictional defect that prevents a court from exercising personal jurisdiction over the defendant.'") (internal citations omitted).

The Association argues that we should interpret the words following the pronoun "that" as a restrictive modifying clause, thereby limiting the prohibition on the use of confessed judgments under the CPA only to those "that waive the consumer's rights to assert legal defenses to an action." CL § 13-301(12). Although we agree that the pronoun "that" is typically used to introduce a restrictive clause,[15] we reject this interpretation here because it is unreasonable. When interpreting the language in a statute, our interpretation "must be reasonable, not 'absurd, illogical, or incompatible with common sense.'" *State v. Neiswanger Mgmt. Servs., LLC*, 457 Md. 441, 459 (2018) (quoting *Lockshin v. Semsker*, 412 Md. 257, 276 (2010)). The Association's interpretation, which purports to distinguish between confessed judgment clauses generally on the one hand, and a subset category of confessed judgments "that waive the consumer's rights to assert legal defenses to an action" on the other, is based upon a fiction that a confessed judgment debtor is not waiving his or her legal defenses and leads to an illogical result.

A confessed judgment clause *necessarily waives* all legal defenses that a consumer could assert prior to entry of judgment. Indeed, that is precisely what happened in this case. Despite the language in the Promissory Note stating that Ms. Cisneros "[did] not waive any defenses to any action to enforce this promissory note and mortgage," she clearly waived many defenses by executing the Promissory Note containing the confessed judgment clause. For example, Ms. Cisneros waived her right to challenge venue and personal jurisdiction. These defenses are significant. Under this waiver of personal

---

[15] *See that & which, A. Generally,* Bryan Garner, Garner's Dictionary of Legal Usage (3d ed. 2011).

35

jurisdiction, the Association could obtain a confessed judgment against Ms. Cisneros in any of the 50 states, the District of Columbia, or Puerto Rico.[16] After the entry of a confessed judgment, Ms. Cisneros or a similarly situated defendant is limited to raising any post-judgment defenses in the jurisdiction that entered the confessed judgment. Moreover, such post-judgment defenses are limited to challenges on the execution of the note or on the amount due. *NILS, LLC v. Antezana*, 171 Md. App. 717, 728 (2006) ("A defense to the claim is a defense challenging: 1) the execution of the promissory note itself or 2) the amount of debt due on the note."). Under the confessed judgment process, once judgment is entered, the burden falls to the defendant to raise meritorious defenses in a post-judgment proceeding. *Id.* at 726. To suggest that a confessed judgment debtor does not "waive defenses" is illogical.

---

[16] At oral argument, counsel for the Association conceded that the confessed judgment provisions in the Promissory Note would authorize the Association to enter judgment against Ms. Cisneros anywhere in the United States and that she would then be forced to present any post-judgment defenses in that jurisdiction. The possibility of such an occurrence is not simply speculative. There has been a documented increase in the use confessed judgment clauses by lenders to obtain judgments in other states that are more favorable to the entry of confessed judgments. The recent uptick in these predatory practices is described in a series of articles published in Bloomberg. *See* Zachary R. Mider & Zeke Faux, *Sign Here to Lose Everything: Part 1: "I Hereby Confess Judgment,"* Bloomberg (Nov. 20, 2018) https://www.bloomberg.com/graphics/2018-confessions-of-judgment/ (https://perma.cc/VKG4-8836); Zachary R. Mider & Zeke Faux, *Sign Here to Lose Everything: Part 3: Rubber-Stamp Justice,* Bloomberg (Nov. 29, 2018) https://www.bloomberg.com/graphics/2018-confessions-of-judgment-new-york-court-clerks/ (https://perma.cc/DXV6-2J2T). Courts in rural New York have become favorite venues of creditors because they can enter judgments usually in one day. One court in Orange County, New York entered 176 judgments in the month of July 2018 for one creditor against small businesses in 38 states and Puerto Rico (none of which were located in New York). Mider & Faux, *How to Lose Everything: Part I*, *supra*.

We hold that the plain language of CL § 13-301(12) is unambiguous and prohibits all confessed judgment clauses in consumer contracts. The very nature of a confessed judgment action necessarily involves the waiver of significant defenses which protect due process. We do not find the language in the statute to be ambiguous because the Association's interpretation is not a reasonable or logical one. *See Koste*, 431 Md. at 29 ("When the plain language of a statute is 'subject to more than *one reasonable interpretation*,' the statutory language is ambiguous.") (citations omitted) (emphasis added); *Lewis v. State*, 348 Md. 648, 654 (1998) ("[W]e interpret the meaning and effect of the language in light of the objectives and purposes of the provision enacted. Such an interpretation must be reasonable and consonant with logic and common sense. In addition, we seek to avoid construing a statute in a manner that leads to an illogical or untenable outcome.") (citations omitted). Adding language to a confessed judgment clause stating that the debtor is not "waiving defenses" does not make it so—nor does it rescue a confessed judgment provision from the CPA's clear prohibition on their use in consumer contracts.

However, even assuming the General Assembly's use of the relative pronoun "that" instead of the relative pronoun "which" in the statute created ambiguity, our review of the legislative history, purpose, structure, and overarching statutory scheme confirms that the General Assembly intended to prohibit the use of all confessed judgment clauses in consumer contracts. *See State v. Roshchin*, 446 Md. 128, 140 (2016) (holding that "even when the language is unambiguous, it is useful to review the legislative history of the

37

statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.") (citation omitted).

The General Assembly enacted the prohibition on confessed judgment clauses through H.B. 692. The legislative history of H.B. 692 makes clear that, throughout the legislative process from January through May 1981, the bill's proponents in the General Assembly were aware of the Supreme Court's recent holding in *Overmyer* and this Court's holding in *Billingsley,* and were concerned that confessed judgment clauses allowed the holder of a confessed judgment note, through its agents, to appear in court on behalf of the consumer-defendant to confess judgment against that consumer in favor of the holder—all without the knowledge of the consumer.

H.B. 692, as originally drafted, prohibited only the use of confessed judgment clauses for home improvements. The original legislation, as proposed by the Consumer Law Center of the Legal Aid Bureau in January 1981, at the request of Delegate John Pica, Jr., had the stated purpose of "prohibiting the use of confessed judgment notes in home improvement transactions," and would have amended the licensing statute applicable to home improvement companies to prohibit "the use of a confessed judgment note, cognovits or other clause authorizing the holder to appear in court and enter judgment against the maker in the case of default." Following the drafting process, H.B. 692 was introduced with altered language to prohibit home improvement companies' "use of a confessed judgment note, authorizing the holder to appear in court and enter judgment against the maker in case of default." The bill clearly equated the "use of a confessed judgment note" with "authorizing the holder to appear in court and enter judgment against the maker in

case of default." As such, the original bill focused exclusively on prohibiting the activity occurring prior to the entry of confessed judgment against the consumer. The written testimony of the bill's sponsor, Delegate Pica, confirms this interpretation. His remarks expressed the bill's intent to ban the use of all confessed judgment clauses in home improvement transactions and focused exclusively on the harm caused by the activity leading up to, and including, the entry of confessed judgment by a court. Delegate Pica explained that the legislation was "merely extending existing Maryland law prohibiting confessed judgments in loans not secured by residential real property, consumer loans, and retail sales contracts."

In explaining the many reasons to prohibit confessed judgments in home improvement contracts, Delegate Pica noted "the first of these reasons is that confessed judgments tend to eliminate the minimal due process rights of notice and opportunity to be heard, rights which have been devoted to constitutional standards, thus deprival of them results in substantial harm to consumers." Delegate Pica referred to the Supreme Court's holding in *Overmyer* and this Court's holding in *Billingsley*, noting that although the confessed judgment process has been determined to be facially constitutional in some transactions, "they may not be in certain [other] factual situations, especially situations where contracts of adhesion are most likely to flourish." Delegate Pica further noted that the "ex[]parte nature of the proceeding as a practical matter cuts off any defense on the counterclaim that may be available to the consumer," and that as a result, consumers often end up making payments on the disputed debts.

Subsequently, the Economic Matters Committee amended H.B. 692 by extending the scope of the bill to apply to all consumer transactions—not just those in the home improvement context—and it introduced the language, which appears in the present form of CL § 13-301(12). This amended version of H.B. 692 was adopted and went into effect on July 1, 1981. The legislative history is devoid of support for the notion that by adding the clause "that waives the consumer's right to assert a legal defense to an action," the General Assembly intended to limit the type of confessed judgment contracts that were prohibited. The Committee file explains the purpose of these amendments to the original bill:

> Makes use of a confessed judgment clause in any consumer transaction an unfair or deceptive trade practice.
>
> Amendments rewrite the bill so that it applies to all consumer contracts, not just home improvement.

With these amendments, the language "use of a confessed judgment" in the original bill ultimately became "use of a contract related to a consumer transaction which contains a confessed judgment clause," while the original description of the instrument as "authorizing the holder to appear in court and enter judgment against the maker of the note" became "that waives the consumer's right to assert a legal defense to an action." The first of these changes reflects an expansion of the types of instruments being covered; from "confessed judgment notes" to "any contract related to a consumer transaction." The second of these changes appears to reflect a shift in emphasis from the acts taken by the holder of the note, to the harm that the holder's actions have on the consumer.

Thus, our review of the legislative history confirms that the last part of subsection CL § 13-301(12)—"that waives the consumer's right to assert legal defenses to an action"—is merely descriptive of what was understood to be the typical confessed judgment clause; it does not establish a separate element that must be satisfied in order for a confessed judgment clause to be in violation of the CPA. The legislative history makes it clear that the General Assembly was concerned about protecting consumers' pre-judgment rights—not the possibility of post-judgment attempts to vacate a confessed judgment already entered.

Our holding that CL § 13-301(12) prohibits the use of contracts containing any confessed judgment clause is also consistent with the purpose, structure, and overarching statutory scheme of the CPA, as well as our case law interpreting the statute. The purpose of the CPA is to "set certain minimum standards for the protection of consumers across the State . . . ." CL § 13-102(b)(1). The General Assembly has instructed that the CPA shall be "construed and applied liberally to promote its purpose." CL § 13-105. We have previously described that the CPA is "intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers." *Washington Home Remodelers, Inc. v. State*, 426 Md. 613, 630 (2012). Moreover, "[w]e seek to 'construe the statute in a way that will advance [the statute's] purpose, not frustrate it.'" *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 423 (2016) (quoting *Neal v. Fisher*, 312 Md. 685, 693 (1988)). The Association's attempt to limit the CPA's prohibition on the use of confessed judgment clauses to a certain subset of confessed judgment clauses that expressly waive legal defenses is not only illogical, given that all confessed judgment

41

clauses operate to waive legal defenses, but is inconsistent with the remedial purpose of the CPA.

Finally, we note that other statutes in the Commercial Law Article that apply to consumers clearly prohibit the use of confessed judgments in transactions such as consumer loans (CL § 13-311(b)(1)), retail credit (CL § 12-507(b)), and retail installment sales (CL § 12-607(a)(2)). We shall interpret the General Assembly's intent to eliminate confessed judgments from consumer transactions consistently with the other consumer statutes prohibiting the use of confessed judgment clauses.

In conclusion, we hold that the plain language of CL § 13-301(12) prohibits the use of contracts containing all confessed judgment clauses in consumer transactions because the very essence of a confessed judgment clause requires that the debtor waive defenses. Our holding that CL § 13-301(12) prohibits the use of all confessed judgment clauses in consumer contracts is confirmed by our review of the legislative history and is consistent with the purpose of the CPA.

## 4. Dismissal of a Confessed Judgment Complaint Pursuant to Maryland Rule 3-611

Having determined that the Association was not permitted under the CPA to obtain a confessed judgment against Ms. Cisneros, we must determine whether the circuit court erred in holding that the complaint should have been dismissed pursuant to Md. Rule 3-611(b). We hold that, under the facts and procedural posture of this case, the proper procedure was dismissal of the confessed judgment action.

42

In this case, the Association filed a single-count complaint for confession of judgment in the district court pursuant to Md. Rule 3-611. As a condition to filing suit, Md. Rule 3-611(a) requires that the plaintiff sign an affidavit stating that "[t]he instrument does not evidence or arise from a consumer transaction as to which a confessed judgment clause is prohibited by Code, Commercial Law Article, § 13-301."

Md. Rule 3-611(b) provides that:

> Action by the Court. If the court determines that (1) the complaint complies with the requirements of section (a) of this Rule and (2) the pleadings and papers demonstrate a factual and legal basis for entitlement to a confessed judgment, the court shall direct the clerk to enter the judgment. *Otherwise, it shall dismiss the complaint.*

(emphasis added).

Once the confessed judgment is entered, under Md. Rule 3-611(c), the clerk "shall issue a notice informing the defendant of entry of judgment and of the latest time for filing a motion to open, modify, or vacate the judgment." After the defendant is served with the notice, Md. Rule 3-611(d) and (e) provide the following process for opening the judgment:

> (d)     Motion by Defendant. The defendant may move to open, modify, or vacate the judgment within 30 days after service of the notice. The motion shall state the legal and factual basis for the defense to the claim.
>
> (e)     Disposition of the Motion. If the court finds that there is substantial and sufficient basis for an actual controversy as to the merits of the action, the court shall order the judgment by confession opened, modified, or vacated and permit the defendant to file a responsive pleading.

The Association argues that because the Promissory Note contains a severance clause, it was appropriate for the district court to vacate the confessed judgment, allow the

43

Association to file an amended complaint alleging a breach of contract arising out of the Promissory Note, and proceed on the amended complaint with a trial on the merits. To support its position, the Association points to the sequence outlined in Md. Rule 3-611(d) and (e) which permits a court to vacate the confessed judgment and authorizes parties to proceed with a trial on the merits. The Association relies upon *Schlossberg v. Citizens Bank of Maryland*, 341 Md. 650, 656 (1996) and *Metalcraft v. Pratt*, 65 Md. App. 281 (1985) for the proposition that if the court opens, vacates, or modifies the judgment, the defendant may file a responsive pleading and defend the case on the merits. These cases are inapposite because they involve commercial transactions, not consumer transactions where the General Assembly has prohibited the use of a confessed judgment clause in a consumer contract as an "unfair, abusive, or deceptive" trade practice.

Although the Association accurately recites the process for opening a confessed judgment under the Maryland Rules, the process described in subsections (d) and (e) are premised upon the entry of a *lawful* confessed judgment. Here, as a matter of law, the filing of the initial complaint and subsequent entry of the confessed judgment under subsections (a) and (b) of the Rule were unlawful and were undertaken in violation of the CPA based upon an erroneous affidavit that the Promissory Note "does not evidence or arise from a consumer loan as to which a confessed judgment clause is prohibited by Code, Commercial Law Article, § 13-301."

Because the entry of a confessed judgment was prohibited under the CPA, there was no legal basis for its entry. The confessed judgment complaint did not comply with the requirements of Md. Rule 3-611(a), and Md. Rule 3-611(b) mandated dismissal of the

44

complaint. Under the procedural posture of this case, we will not ignore the mandatory dismissal language in the rule and grant the Association leave to file an amended complaint alleging breach of contract in the unlawful confessed judgment action. Given the mandatory language of the rule and the equities, dismissal of the initial confessed judgment case was required under Md. Rule 3-611(b).

Although we hold that the Association could not file an amended complaint in the unlawful confessed judgment action, we nonetheless hold that the Association may file a separate complaint alleging breach of contract under the terms of the Promissory Note, severed from the unenforceable confessed judgment clause.[17]  We disagree with Ms. Cisneros's position that the Promissory Note is void in its entirety.  Although CL § 13-301(12) prohibits the use of "a contract related to a consumer transaction containing a confessed judgment clause," there is nothing in the Consumer Protection Act to indicate that the General Assembly intended that a contract made in violation of its provisions is void in its entirety, where the offending clause may be severed.  We have held that:

> "A contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." *Medex v. McCabe*, 372 Md. 28, 39 (2002). *See also State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.,* 307 Md. 631, 643 (1986) (holding that a contractual

---

[17] In the end, we recognize that if the Association files a separate action for breach of contract severed from the confessed judgment case, the end result may be the same as if the Association were permitted leave to file an amended complaint for breach of contract in the initially filed confessed judgment case.  However, given the mandatory language of Md. Rule 3-611(b) and the fact that filing the confessed judgment action was unlawful, it is neither fair nor equitable to allow the Association to file an amended complaint seeking relief that may relate back to the initial filing date of the unlawful action. To the extent that there is a benefit to filing an amended complaint in the context of the unlawful action, the Association should not reap that benefit.

provision that violates public policy is invalid, but only to the extent of conflict between stated public policy and contractual provision).

*Mayor & City Council of Baltimore v. Clark*, 404 Md. 13, 33 (2008). A clause "can be severed from the instrument without destroying the instrument's overall validity or the validity of other provisions if it is not so interwoven as to be logically inseparable from the rest." *Connolley v. Harrison*, 23 Md. App. 485, 488 (1974) (citing *Northwest Real Estate Co. v. Serio*, 156 Md. 229, 232 (1929) (citations omitted)).

Here, we hold that the confessed judgment clause of the Promissory Note may be severed without destroying the instrument's overall validity. Ms. Cisneros should not obtain a windfall and escape responsibility for paying her delinquent homeowners assessments solely because the Promissory Note contained a confessed judgment clause. Should the Association decide to proceed with an action for breach of contract on the Promissory Note, severed from the confessed judgment clause, Ms. Cisneros will have the ability to raise all defenses permitted by law. We agree with the circuit court that dismissal was required under Md. Rule 3-611(b). However, we hold that the dismissal should have been without prejudice to the Association to file a separate breach of contract action based on the promissory note with the confessed judgment clause severed.

### III. CONCLUSION

For the reasons explained above, we hold that the collection of HOA assessments falls within the purview of the Consumer Protection Act. Specifically, we hold that HOA assessments fall within the broad definition of "consumer debt" under the CPA. Moreover, the Promissory Note containing the confessed judgment clause constituted an extension of

credit to Ms. Cisneros to pay delinquent HOA assessments, which falls squarely within the definition of "consumer credit" under the CPA. Under the plain language of CL § 13-301(12), the CPA forbids the use of all confessed judgment clauses in contracts related to consumer transactions. A creditor cannot circumvent the protections afforded to a debtor under the CPA by inserting language in the confessed judgment clause which purports to preserve a debtor's legal defenses. Finally, we hold that because the Association lacked the legal authority to file a confessed judgment complaint, the appropriate remedy under Maryland Rule 3-611(b) was dismissal of the case without prejudice to file a separate breach of contract action based on the promissory note with the confessed judgment clause severed. Although the Association may be able to file a separate breach of contract claim under the Promissory Note by severing the confessed judgment clause from the balance of the Note, it was improper to file such an action within the unlawful confessed judgment proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED IN PART, REVERSED IN PART. COSTS TO BE PAID BY THE PETITIONER.**

Circuit Court for Montgomery County
Case No.: 9842D
Argued: September 5, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 3

September Term, 2019

———————————————

GOSHEN RUN HOMEOWNERS
ASSOCIATION, INC.

v.

CUMANDA CISNEROS

———————————————

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Raker, Irma S.,
    (Senior Judge, Specially Assigned)

JJ.

———————————————

Dissenting Opinion by Getty, J.,
which Hotten and Raker, JJ., join.

———————————————

Filed: January 27, 2020

Respectfully, I dissent.

As a threshold issue in this case, I would hold that homeowners' association assessments ("HOA assessments") derive from a real property obligation under the Maryland Real Property Article and are not consumer transactions subject to the Consumer Protection Act ("CPA"), Md. Code (1975, 2013 Repl. Vol.), Commercial Law ("CL") § 13-101 *et seq*.

The Maryland Homeowners Association Act ("HOA Act") in the Real Property Article establishes HOA assessments. Md. Code (1974, 2015 Repl. Vol.), Real Property ("RP") § 11B-101 *et seq*. The statutory authority for a homeowners' association to impose a mandatory fee on lots, or the owners or occupants of lots, is through a real property "declaration," an instrument recorded among the land records of the county. RP § 11B-101(d). HOA assessments are not optional consumer contracts but instead are a requirement of the HOA declaration and a responsibility of the lot owner. RP § 11B-117. Unlike a consumer transaction, the HOA declaration creates continuing and mandatory obligations for HOA assessments to support common use property maintenance and facilities.

In this case, Ms. Cisneros argues that HOA assessments fall within the purview of the CPA because the assessment "relates to a consumer transaction." Ms. Cisneros first argues that assessments are consumer transactions because they are used for "personal,

family or household needs."[1]  Ms. Cisneros further argues that HOA assessments relate back to the sale and original extension of credit—which is a consumer transaction. Therefore, Ms. Cisneros believes, HOA assessments fit into the CPA definition of "consumer credit."

Adopting Ms. Cisneros' argument, the Majority proceeds to apply other statutory schemes to attempt to fit the real property declaration of HOA assessments into the Maryland definition of a consumer transaction under the state CPA.  As discussed below, I would hold that HOA assessments are not consumer transactions under the Maryland CPA because they are neither "consumer debt" nor an "extension of credit."

## I.    HOA Assessments Are Not Consumer Debt.

The Majority first relies on the federal Debt Collection Practices Act ("FDCPA") to hold that HOA assessments constitute consumer debt because they are incurred primarily for personal, household, and family purposes.  Therefore, the Majority believes, HOA assessments fit within the definition of "consumer debt" under the CPA.  I disagree.

---

[1] Specifically, Ms. Cisneros argues that

> [i]t is beyond doubt that the assessments imposed by Goshen Run for care and maintenance of the common areas was in part for the benefit of Ms. Cisneros' property interest in those common areas.  In other words, the assessments are for the benefit of Ms. Cisneros personally, and her household.  The [confessed judgment promissory note], which Goshen Run acknowledges is "composed of . . . the delinquent assessments imposed by Goshen Run," and which mandates payment of future assessments, is related to a consumer transaction, subject to [CL] § 13-301(12).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C.A. § 1692a(5). The Maryland Consumer Debt Collection Act ("MCDCA") prohibits a debt collector, *inter alia*, from "[e]ngag[ing] in any conduct that violates . . . the [FDCPA]." CL § 14-202(11).

In contrast, the Maryland CPA defines "consumer debt" as "debts . . . which are primarily for personal, household, family or agricultural purposes." CL § 13-101(d)(1). Noticeably absent in the language of the CPA definition is the "obligation" and "arising out of" language present in the FDCPA: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction. . . ."

The Majority attempts to read those words into the CPA definition of "consumer debt" by applying federal cases that have interpreted the FDCPA. Since 1997, several federal courts have held that HOA assessments are debts under the FDCPA. *See* Majority Slip Op. at 22–23. Those courts follow a familiar refrain: homeowners are consumers that have an obligation to pay money to the association and because the obligation arises out of a "transaction" which is "primarily for personal, family, or household purposes," thus HOA assessments are a debt within the definition of the FDCPA.

To be sure, the Maryland CPA cross references the violation of the MCDCA, and by implication the FCDCA, as a violation of the CPA. CL § 13-301(14)(iii). There is no indication, however, that the FDCPA's broader definition of "debt" should be transposed

3

on the Maryland CPA's limited definition of "consumer debt."  Reading anything else into the statute, such as transposing definitions from one cross-referenced act to supersede a definition of the same word in the CPA, is counter to the General Assembly's language and to this Court's long-standing tradition of deferring to the Maryland legislature.

## II. The Promissory Note Is Not An "Extension of Consumer Credit."

The Majority next determines that HOA assessments constitute "consumer credit" because they are incurred primarily for personal, household, and family purposes.  The Majority reasons that HOA assessments relate back to the sale of property and original "extension of credit"—which is a consumer transaction.  This position incorrectly conflates the consumer *transaction* of purchasing personal property with the property *obligation* of paying HOA assessments.[2]

In *Schinnerer v. Maryland Insurance Administration*—the Majority's only support for their consumer credit argument—Schinnerer, an insurance agent, was obligated to collect, report, and remit premiums to his insurance company within forty-five days.  147 Md. App. 474, 479–80 (2002).  When Schinnerer was unable to make the remittance in time, he negotiated payment plans with interest that were memorialized in promissory notes.  *Id.* at 480–81.  The insurance commissioner suspended Schinnerer's license for

---

[2] *See Fink v. Meadow Lake Estates Homeowners' Ass'n*, 384 Mont. 552 (2016) (holding that under the Montana CPA definition of "consumer" *i.e.*, "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes," the homeowner was not a "consumer" in relation to the HOA when purchasing her lot (quoting Mont. Code. Ann. § 30-14-102(1)).

4

failure to remit payments. *Id.* at 483. Schinnerer, in attempting to avoid the suspension, argued that the extension of credit under the promissory notes transformed the relationship from principal-agent to lender-borrower, such that he did not violate the fiduciary duties set out by his agreement with the insurance company. *Id.* at 489. The Court of Special Appeals rejected this argument and found that Schinnerer still owed a fiduciary duty based on the existence of a loan program that the insurance company formerly had in place for its agents. *Id.* at 490.

The Majority takes *Schinnerer* to mean that an "extension of credit" under circumstances similar to the present case does not change the character of the relationship. This argument is tenuous even putting aside the factual nature of *Schinnerer*, its specific review of an Insurance Commissioner's findings for error, and its limited analysis as applied to the Insurance Article. The Majority reasons that the confessed judgment promissory note does not change the consumer nature of the HOA assessments or the character of the relationship between the parties but provides limited support for the similarities between the original extension of credit and the HOA assessment transactions. As the Majority admits, the primary question is the "nature" of the transactions. Even accepting that the promissory note reflects a debt incurred by Ms. Cisneros for personal, household and family purposes—which I do not—the "nature" of the acknowledgment of and agreement to repay the delinquent HOA assessments (mandatory property interest) is not of the same "nature" as the original credit transaction to purchase the property (voluntary consumer transaction).

5

Citing the Equal Credit Opportunity Act and the Credit Services Businesses Act, the Majority reasons that "[t]he CPA's definition of 'consumer credit' is consistent with the definition of 'credit' and 'extension of credit' in the context of other consumer debt statutes codified in the Commercial Law Article." Majority Slip Op. at 24. That reasoning assumes that HOA assessments are consumer debts, *see id.* ("Given its broad language, we read CL § 13-101(d) to apply generally to transactions in which repayment of personal, household, family, and agricultural debts are deferred."), a premise with which, as outlined above, I fundamentally disagree.

To the contrary, the HOA Act, and not the CPA, governs assessments: "As provided in the declaration, a lot owner shall be liable for all homeowners association assessments and charges that come due during the time that the lot owner owns the lot." RP § 11B-117(a). As for collection of assessments, "a homeowners association may enforce the payment of the assessments and charges provided in the declaration by the imposition of a lien on a lot in accordance with the Maryland Contract Lien Act." RP §11B-117(b). The statutory provisions of the Contract Lien Act are also a title in the Real Property article. *See* RP § 14-201 *et seq*. Assessments are in turn governed by the covenants of the respective HOA. Such covenants are not typically optional contracts but rather a requirement of the HOA declaration.

Unlike a consumer transaction, the HOA declaration creates continuing and mandatory real property obligations. More specifically, a declaration

> creates the authority for a homeowners association to impose on lots, or on the owners or occupants of lots, or on another homeowners association, condominium, or cooperative housing corporation any mandatory fee in

6

connection with the provision of services or otherwise for the benefit of some or all of the lots, the owners or occupants of lots, or the common areas.

RP § 11B-101(d)(1).

The General Assembly has not specified that such a required real property obligation is subject to the Maryland CPA. The CPA does not reference or adopt the HOA Act.[3] In contrast, the Legislature has adopted statutory provisions for the CPA to cover

---

[3] Inversely, the Majority cites but does not rely on the "2007 Amendment," RP § 11B-115, the lone instance where the HOA Act cross references the CPA. Majority Slip Op. at 16–17. Prior to 2007, there is no indication in the legislative history or otherwise that the CPA applied to the HOA Act. In 2007, however, the HOA Act was amended to add RP § 11B-115, titled "Enforcement Authority of Division of Consumer Protection." In addition to adding a specific definition of "consumer" to the HOA Act, the 2007 Amendment states that "to the extent that a violation of any provision of this title affects a consumer, that violation shall be within the scope of the enforcement duties and powers of the Division of the Consumer Protection of the Office of the Attorney General, as described in Title 13 of the Commercial Law Article." RP § 11B-115(c). The language of § 11B-115(c) thus limits the application of the enforcement provisions of Subtitle 4 of the CPA to the HOA Act. In other words, where an HOA Act violation affects a "consumer" as defined in the HOA Act, the Division of Consumer Protection has enforcement powers under CL § 13-401 *et seq*. The Fiscal and Policy Note to the 2007 Amendment explains that the Legislature amended the Real Property Article, including the addition of enforcement powers under RP § 11B-115, as a recommendation from the 2006 Final Report of the Task Force on Common Ownership Communities. *See* TASK FORCE ON COMMON OWNERSHIP COMMUNITIES, 2006 FINAL REPORT (Dec. 31, 2006), https://msa.maryland.gov/megafile/msa/speccol/sc5300/sc5339/000113/003000/003160/unrestricted/20066534e.pdf ; 2007 Md. Laws ch. 593, House Bill 183, Fiscal & Policy Note, http://mgaleg.maryland.gov/2007rs/fnotes/bil_0003/hb0183.pdf. The Task Force concluded that "local governments should be required to coordinate referrals of disputes involving alleged violation of State common ownership community laws to the Office of the Attorney General for review and appropriate enforcement action." House Bill 183, Fiscal & Policy Note at 2. The Task Force's Report makes clear that the main concern of the Task Force was to apply Subtitle 4 of the CPA to have the Division of Consumer Protection intervene and act as a mediator to avoid HOA disputes from ending up in court. *See* TASK FORCE REPORT at 14 (Suggesting "government enforcement at the State level when disputes involving alleged violations of [common ownership community] laws cannot be resolved through conciliation, mediation or arbitration at the local level. . . . [S]uch disputes should be reviewed by the Office of the Attorney General and,

unfair or deceptive trade practices as it relates to the sale of real property, the sale of home warranties, and the protection of homeowners in foreclosure.  *See* CL § 13-301(14)(xvi) (indicating that an unfair or deceptive trade practice includes a violation of RP § 10-601 *et seq.* governing new home warranties and RP § 7-301 *et seq.* governing the homeowners in foreclosure).

Absent specific language that incorporates the HOA Act or HOA assessments as consumer transactions subject to the CPA, I would exclude this real property obligation.  I am cognizant of CL § 13-105 which requires us to construe and apply liberally the CPA to promote its purpose.  There is no doubt that confessed judgments can be used as a deceptive trade practice.  They are not, however, per se deceptive trade practices within the definition of the CPA as it relates to HOA declarations and assessments.  The CPA, even construed liberally, is not the proper vehicle to prohibit confessed judgments in HOA declarations.

In summary, I would hold that under the Maryland Real Property article, HOA assessments are not consumer transactions and therefore are not subject the CPA.

Judge Hotten and Judge Raker have authorized me to state that they join in this opinion.

---

where appropriate, enforcement action taken. . . .”).  There is no statutory language or indication of legislative intent that § 11B-115 applies the CPA wholesale to the HOA Act. Rather, the language of § 11B-115 and the findings of the Task Force indicate a very nuanced cross-reference to the CPA specifically regarding enforcement.